O. R. TRUBELL, Individually and d/b/a Gulf Specialties Manufacturing Company, Appellant,

v.

J. W. PATTEN, Appellee.

No. 1207.

Court of Civil Appeals of Texas, Tyler.

May 24, 1979.

Rehearing Denied June 21, 1979.

Paul W. Jones, Jr., Jones, Davis & Craig, Austin, for appellant.

Page I. Austin, Vinson & Elkins, Eleanor Swift Glass, Paul E. Stallings, Houston, for appellee.

McKAY, Justice.

This is a legal malpractice case resulting in a directed verdict and judgment for appellee. Appellant, O. R. Trubell, individually and d/b/a Gulf Specialties Manufacturing Co., was a manufacturer of adhesive compounds in Houston. Among others, one type of adhesives he made was solvent-based and highly flammable. He sold his adhesives to various customers, including, in 1968, General Refrigeration & Supply Co. The latter bought the adhesive in 55-gallon drums and repackaged it in one-gallon containers for distribution. The type sold to General Refrigeration contained a highly volatile solvent, hexzane, as a basic ingredient. George Chandarlis worked for an air conditioning company which had purchased the hexzane-based adhesive from General Refrigeration. While using the adhesive in the attic of a house, Chandarlis was seriously injured when the can of adhesive exploded.

Chandarlis brought suit against appellant in 1970 for personal injuries and resultant damages in the amount of $500,000. Aetna Insurance Co., with whom appellant had a $25,000 policy of liability insurance, retained the services of J. W. Patten, appellee

here, to defend its and appellant's interests. It appears that Aetna informed appellant that the suit against him was for an amount in excess of the policy limits and that he had the right to hire his own attorney to protect his interests. Pursuant thereto, appellant did retain his personal attorney, James Bobbitt, in July 1971, and both Bobbitt and Patten worked on the case. Texas Employers Insurance Association intervened, claiming rights by subrogation to any recovery by Chandarlis to the extent of more than $32,000 for recoupment of worker's compensation benefits paid to Chandarlis.

A letter dated April 18, 1973, was sent by Chandarlis' attorney to appellee, indicating that he and his client would offer to settle for $225,000, suggesting that appellee advise appellant of his rights under the *Stowers* doctrine [*G.A. Stowers Furniture Co. v. American Indemnity Co.*, 15 S.W.2d 544 (Tex.Comm'n App.1929, holding approved)], and alternatively offering to settle for the limits of appellant's insurance policy. Apparently, Chandarlis' attorney, Joe Steelman, was under the impression that the policy limits were $100,000. It appears that it was the consensus among the defense lawyers involved that appellant's exposure to liability was serious. Appellee apparently forwarded Steelman's letter to Aetna and took no further action with regard to it. Bobbitt informed appellant of Steelman's letter and prepared a letter from appellant to Aetna in May 1973, demanding that Aetna settle for the policy limits. In October 1973, Aetna made an offer of $25,000 to Chandarlis which was refused.

In January 1974, immediately prior to the time the Chandarlis case was set for trial, the court suggested that the parties attempt to settle the case. The following day settlement negotiations were conducted, appellee indicating that Aetna would tender the policy limits, and Bobbitt securing a settlement on such terms that appellant was required to pay $35,000 in excess of the policy limits.

Appellant commenced the instant action in July 1974. Appellee, in July 1975, pro-- pounded interrogatories to appellant pursuant to Rule 168, T.R.C.P., requesting the names of all expert witnesses known to appellant or his attorney who might be called in behalf of appellant, requesting copies of any reports made by such expert witnesses, and asking if appellant were willing to supplement his answers thereto. In response, appellant stated that he knew of no such expert witnesses but that he and his attorney agreed "to provide the name and address of such expert witnesses at such time as they are known and prior to trial so as not to surprise [appellee];" appellant further stated, "it is agreed that these answers will be supplemented prior to trial of this cause."

On two or three occasions thereafter, appellee or Aetna became aware of appellant's intention to use certain persons as expert witnesses, necessitating requests for continuance to allow time for deposing of such witnesses by appellee and Aetna. On each occasion, appellant withdrew his intention to so use such witnesses.

In due course, this case came on for trial in the court below. The voir dire of the jury panel took place the first day, and during the noon recess on the second day, appellant and Aetna reached a settlement agreement whereby Aetna was dismissed as a party to the suit, leaving only appellee as a party defendant. Following the trial court's approval of the settlement with Aetna, the matter of appellant's use of Steelman and Bobbitt as expert witnesses to testify regarding acts or omissions of professional negligence by appellee, was discussed, resulting in a ruling by the court to exclude such testimony. Appellant thereupon made a bill of exception, Steelman testifying, out of the presence of the jury, to several acts or omissions by appellee which, Steelman opined, constituted negligence, viz., appellee's failure to know the coverage limits of appellant's policy with Aetna when the purported settlement offer was made via Steelman's letter; appellee's failure to respond to said offer or take any other action with respect thereto other than forwarding it to Aetna; appellee's failure

to discuss the seriousness of the situation with appellant; appellee's failure to adequately review the case prior to trial so as to be able to properly advise appellant regarding his chances of prevailing at trial. The jury was then returned to the courtroom and the trial proceeded, with Steelman testifying before the jury as merely a fact witness.

At the close of appellant's case, appellee moved for an instructed verdict on the grounds that there was no evidence of negligence on his part nor that any act or omission of his was a proximate cause of any alleged damages; that an attorney retained by an insurer to defend its policyholder has no duty to settle, i. e., the *Stowers* doctrine applies not against an attorney but only against the insurer; and that the settlement offer was not valid. The trial court agreed that appellee was entitled to judgment as a matter of law and instructed a verdict accordingly. Judgment was entered that appellant take nothing.

Appellant duly perfected his appeal and predicates it upon a single point of error. He complains that the trial court erred and abused its discretion in refusing to allow him to present the expert testimony of Steelman to the jury. Appellant admits that, as late as one week prior to trial, he had been unable to secure an expert witness and had so advised appellee. It is appellant's contention that appellee suffered no surprise with regard to the proffer of Steelman as an expert witness, in addition to his being used as a fact witness. "In the interest of justice and on the basis of good faith," appellant states, such testimony should have been admitted because appellant "had exhausted all avenues as to locating and having other witnesses as to this issue and that at the time the decision was made to use such witness for such purposes Appellee's counsel was made aware of such fact." Appellant further contends that the surprise and harm claimed by appellee cannot outweigh the prejudice to appellant of excluding the evidence because, without it, appellant had no basis for requesting a special issue on negligence. Appellant cites no authorities in his brief.

Appellee's rejoinder consists of three counterpoints. First, he argues that the trial court properly exercised its discretion in excluding the expert testimony, citing appellant's response to his interrogatories and appellant's failure to inform him of the proposed use of Steelman as an expert witness until the second day of trial, which, appellee claims, unfairly surprised and prejudiced him and violated appellant's agreement to supplement under Rule 168. Although appellee had deposed Steelman, he argues that, in reliance on said rule and agreement, he deposed him merely as a fact witness and not as an opinion witness with respect to the issue whether appellee's conduct constituted negligence; therefore, he contends, he was surprised and unprepared to meet the proffered expert testimony. In his second counterpoint, appellee argues that without expert testimony on the issue of negligence, appellant was not entitled to have the case submitted to the jury; thus, the verdict was correctly instructed because there was no evidence of negligence. Finally, appellee asserts in his third counterpoint that even had Steelman's expert testimony been admitted, there was no evidence that any act or omission by appellee proximately caused appellant any damage. The contention there is that appellant must show that he had a meritorious defense to the original suit, by virtue of which, but for appellee's alleged negligence, appellant would have obtained a more favorable result, i. e., that a settlement within policy limits would have been secured, and that appellant failed to demonstrate this. Appellee further contends that the Steelman letter was not a valid offer to settle within policy limits, because Steelman had no authority to settle on behalf of Texas Employers Insurance Association, and had no authority to settle the suit without the consent of his client, Chandarlis. Steelman did not represent Texas Employers and Chandarlis had never consented to the offer of settlement.

■ When, under the evidence produced at trial before the jury, a party is entitled

to a verdict as a matter of law, the court, on its own motion or that of a party, may instruct the jury as to the verdict it must return or may withdraw the case from the jury and render judgment. 3 McDonald, Texas Civil Practice, sec. 11.25 at p. 226 (1970).

Rule 168, T.R.C.P., entitled "Interrogatories to Parties," states in part,

"Interrogatories may relate to any matters which can be inquired into under Rule 186a . . . . A party may be required in his answers to identify each person whom he expects to call as an expert witness at the trial and to state the subject matter concerning which the expert is expected to testify.

.    .    ..    .    .

"A party whose answers to interrogatories were complete when made is under no duty to supplement his answers to include information thereafter acquired, except as follows: (1) a party is under a duty seasonably to amend his answer if he obtains information upon the basis of which . . . (b) he knows that the answer though correct when made is no longer true and the circumstances are such that a failure to amend the answer is in substance a knowing concealment; and (2) a duty to supplement answers may be imposed by order of the court, agreement of the parties, or at any time prior to trial through new requests for supplementation of prior answers."

Specific provision is made for remedial action to be taken where the party to whom interrogatories are addressed refuses to answer them, including application to the court for an order compelling an answer and authorization for the court to act under Rule 215a(a) and (b) where the order is not complied with. Provision is also made where a party, "except for good cause shown," fails to answer interrogatories after proper service thereof, including authorization to the court to make proper orders, including those authorized by Rule 215a(c). The action that may be taken by the trial court under these circumstances, under Rule 215a, includes the exclusion of evidence offered by the offending party.

■ Although there is a specific requirement for supplementation of answers to interrogatories provided by Rule 168, there is no specific provision allowing remedial action by the court for a failure to comply with the requirement to supplement. It is clear, however, that the imposition of penalties or sanctions for failure or refusal of a party to comply with discovery rules, or orders made pursuant thereto, is directed to the sound discretion of the trial court, and that the court's action can be set aside only upon a showing of a clear abuse of discretion. *United States Leasing Corp. v. O'Neill, Price, Anderson & Fouchard, Inc.,* 553 S.W.2d 11, 13 (Tex.Civ.App.-Houston [14th Dist.] 1977, no writ); *Young Companies, Inc. v. Bayou Corp.,* 545 S.W.2d 901, 902 (Tex.Civ.App.-Beaumont 1977, no writ); *Ebeling v. Gawlik,* 487 S.W.2d 187, 189 (Tex.Civ.App.-Houston [1st Dist.] 1972, no writ); *Hankins v. Haffa,* 469 S.W.2d 733, 737–8 (Tex.Civ.App.-Amarillo 1971, no writ).

In Rule 26, Federal Rules of Civil Procedure, entitled "General Provisions Governing Discovery," paragraph (e) provides for supplementation of responses and is similar to our Rule 168. It provides generally that there is no duty to supplement responses except as follows:

"(1) A party is under a duty seasonably to supplement his response with respect to any question directly addressed to . . (B) the identity of each person expected to be called as an expert witness at trial, the subject matter on which he is expected to testify, and the substance of his testimony.

"(2) A party is under a duty seasonably to amend a prior response if he obtains information upon the basis of which . . (B) he knows that the response though correct when made is no longer true and the circumstances are such that a failure to amend the response is in substance a knowing concealment.

"(3) A duty to supplement responses may be imposed by order of the court, agreement of the parties, or at any time

prior to trial through new requests for supplementation of prior responses."

The Note of the Advisory Committee on Rules pertaining to the 1970 amendment to Rule 26 states,

"The duty [to supplement responses] will normally be enforced, in those limited instances where it is imposed, through sanctions imposed by the trial courts, including *exclusion of evidence*, continuance, or other action, as the court may deem appropriate." [Emphasis added.]

We see no good reason to take a different view for our own practice, which derives from the Federal Rules. See *Wright v. Wright*, 154 Tex. 138, 274 S.W.2d 670, 674 (1955). We hold, therefore, that it is within the sound discretion of the trial court to impose sanctions or penalties as it deems appropriate, including the exclusion of evidence, where a party has failed or refused to seasonably supplement his answers to interrogatories in accordance with Rule 168, supra. See also *Texas Employers Insurance Association v. Thomas*, 517 S.W.2d 832, 834–5 (Tex.Civ.App.-San Antonio 1974, writ ref'd n. r. e.).

 We now come to the question whether the trial court in the instant case abused its discretion in excluding the testimony of an expert witness proffered by appellant. Appellant, in his answers to appellee's interrogatories, expressly agreed "that these answers will be supplemented prior to trial of this cause." In argument before the trial court, appellant's counsel admitted that appellant had agreed and was obligated to supplement his answers to interrogatories requesting the identification of any expert witnesses he planned to call, that he never designated Steelman as an expert witness, that he had assured appellee's counsel as late as one week prior to trial that he had no expert witnesses, and that Steelman had been examined during his deposition as a fact witness only. Appellee contends that he prepared his case and announced ready for trial in reliance on appellant's obligation to supplement his answers, that he did not take Steelman's deposition as an opinion witness, and that he

therefore had no opportunity to prepare to meet Steelman's testimony as an opinion witness. Although appellant admits that he had no basis on which to request that issues be submitted to the jury on the question of legal malpractice without expert testimony thereon, he prepared his case and announced ready for trial without requesting a continuance, knowing that he had no expert witness to call and no expert testimony to produce. Finally, although appellant had known for more than three years before trial that Steelman was to be a fact witness in the case, he did not inquire of Steelman whether he would be willing to be an opinion witness as well until the second day of the trial. Under these circumstances, we find no abuse of discretion by the trial court in refusing to allow appellant's witness Steelman to testify as an expert before the jury. See *Tabatchnick v. G. D. Searle & Co.*, 67 F.R.D. 49, 55 (D.N.J. 1975); *Carver v. Salt River Valley Water Users' Association*, 104 Ariz. 513, 456 P.2d 371, 375 (1969); *Aulgur v. Zylich*, 390 S.W.2d 553, 556 (Mo.Ct.App.1965). Appellant's point of error is overruled.

Accordingly, the judgment of the trial court is affirmed.