Carolyn Parker DUNCAN, Individually and As the Duly Appointed, Qualified and Acting Administratrix of the Estate of James E. Parker, Deceased, and As Next Friend of Carl Glenn Parker, Sandra Deane Parker and Thomas Lane Parker, Appellants,

v.

CESSNA AIRCRAFT COMPANY, Appellee.

CESSNA AIRCRAFT COMPANY, Appellant,

v.

Darla SMITHSON, et al., Appellees.

Nos. 13308, 13355.

Court of Appeals of Texas, Austin.

April 22, 1982.

Rehearing Denied May 12, 1982.

Law Offices of Pat Maloney, Pat Maloney, Sr., Pat Maloney, Jr., George LeGrand and Jack Pasqual, by Jack Pasqual, San Antonio, for appellants in No. 13308 and appellees in No. 13355.

Graves, Dougherty, Hearon & Moody, John T. Anderson, Robert M. Roller, Ste-

phen Jody Helman, and Robert J. Hearon, Jr., by John T. Anderson, Austin, Rodey, Dickason, Sloan, Akin & Robb, Albuquerque, N. M., for Cessna Aircraft Co.

## ON MOTION FOR REHEARING

### SHANNON, Justice.

The opinion of this Court handed down on March 17, 1982, is withdrawn, and the following opinion replaces it.

James Parker and Benjamin Smithson perished in the crash of a Cessna 150 airplane in New Mexico in 1976. The plane was piloted by Smithson and owned by Air Plains West, Inc.

Darla Smithson and Carolyn Parker Duncan, widows of Smithson and Parker, filed wrongful death suits in the district court of Travis County against Cessna Aircraft Company to recover individually, as administratices of their husbands' estates, and as next friends for their minor children. After trial to a jury, the district court rendered judgment that Mrs. Duncan and the children take nothing, and that Mrs. Smithson and the children recover $1,200,000. Mrs. Duncan and the children have perfected an appeal from the take nothing judgment and Cessna has appealed from the judgment rendered for Mrs. Smithson. The respective appeals, although separately treated in a great welter of briefs, were consolidated for purposes of oral argument and both will be considered in this opinion.

The plaintiffs alleged, and endeavored to prove, that the seats in the Cessna aircraft occupied by plaintiffs' decedents were defectively designed or manufactured by Cessna, and failed in the crash of the plane causing the fatal injuries to the passengers. The plaintiffs attempted to show further that since the crash occurred at a speed of less than sixty miles per hour, Smithson and Parker would have survived had the seats remained secure during the crash.

In addition to denying that the airplane seats were defective in design or manufacture, Cessna alleged that Mrs. Duncan and the children were barred from asserting any claim against it by reason of a previously executed settlement agreement and release of all parties. By counterclaim, Cessna asserted, among other things, that Smithson's negligence caused the crash and that it would be entitled to contribution from Smithson's estate for any damages it might be required to pay Mrs. Duncan.

Upon motion by Cessna, the district court determined that New Mexico law governed the trial of the cause to the extent that it differed from Texas law.

The case was submitted to the jury by eight special issues. The jury answered that the seats of the airplane were defectively designed and manufactured and that such defects in design and manufacture proximately caused the fatal injuries to Parker and Smithson. The jury fixed damages of $1,000,000 for Mrs. Duncan and her children and $1,200,000 for Mrs. Smithson and her children.

Cessna moved for judgment *non obstante veredicto* on Mrs. Duncan's cause of action, arguing her previously executed settlement agreement and release absolved Cessna from liability. The district court granted the motion and rendered judgment that Mrs. Duncan take nothing, and rendered judgment upon the jury's verdict for Mrs. Smithson.

### MRS. DUNCAN'S RELEASE

In 1976, prior to filing suit against Cessna in district court in Travis County, Mrs. Duncan and her minor children filed a wrongful death suit against Air Plains West, Inc., in the United States District Court for the Northern District of Texas, alleging that the negligence of Smithson and his employer, Air Plains West, Inc., proximately caused the death of Parker. Thereafter, Mrs. Duncan and the children settled this suit for $90,000. As a part of that agreement, she and the children released Air Plains West, Inc., Smithson's estate, and purported to release as well:

any other corporations or persons whomsoever responsible therefor, whether named herein or not, from any and all claims of every kind and character what-

soever, and from any cause of action, claims, demands, costs, loss of services, compensation, medical, hospital and doctor expenses, funeral and burial expenses, and damages, both actual and exemplary, on account of the fatal injuries sustained by the said James E. Parker, which resulted in his death, as the result of an airplane crash occurring on or about October 19, 1976, wherein a Cessna 150 Aircraft, Serial Number 15075844, and Registration Number N–66113, owned by Air Plains West, Inc., and being piloted by Benjamin A. Smithson, Jr., crashed three miles southwest of Texico, New Mexico.

This settlement agreement, signed by Mrs. Duncan and the guardian *ad litem* for the children, formed the basis for entry of judgment *non obstante veredicto* in favor of Cessna in the present lawsuit.

Mrs. Duncan argues that the district court erroneously rendered judgment *non obstante veredicto*. She asserts the court mistakenly applied New Mexico law, rather than Texas law, in construing the release. Under Texas law, Mrs. Duncan argues, Cessna may not benefit from the release. The initial issue is whether Texas law or New Mexico law controls the construction of the release.

## A. Application of Texas or New Mexico Law to the Release

 A release of tort liability is a contract, and the effect of provisions in a release will be determined according to rules of contract construction. *Berry v. Guyer*, 482 S.W.2d 719 (Tex.Civ.App.1972, writ ref'd n. r. e.); *Garcia v. Villarreal*, 478 S.W.2d 830 (Tex.Civ.App.1971, no writ); *Loy v. Kuykendall*, 347 S.W.2d 726 (Tex. Civ.App.1961, writ ref'd n. r. e.); *Mutual Fire & Auto Insurance Co. v. Green*, 235 S.W.2d 739 (Tex.Civ.App.1950, no writ); *see* 15 S. Williston, *A Treatise on the Law of Contracts* § 1820, at 462–63 (3rd ed. 1972). Ordinarily, contractual provisions will be construed under the law of the state intended by the parties to control, and in the absence of any express manifestation by the parties, the presumption is that the parties contract with reference to the law of the state where the contract is made. *Austin Building Co. v. National Union Fire Insurance Co.*, 432 S.W.2d 697, 701 (Tex.1968); *Foundation Reserve Insurance Company v. Cody*, 458 S.W.2d 214 (Tex.Civ.App.1970, no writ).

Mrs. Duncan signed the settlement agreement in Potter County, Texas. The agreement is silent as to which state's law controls the construction of the agreement's terms. Under the rule announced in *Austin Building Co.*, this Court must presume that the parties contracted with reference to Texas law.

Both Mrs. Duncan and Cessna assume that rules announced in the Restatement (Second) of Conflict of Laws (1971) are applicable in selecting whether Texas or New Mexico law controls the effect of the release. Section 145(1) of the Restatement provides that the rights and liabilities of the parties with respect to an "issue in tort" are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties.

In two recent opinions, the Supreme Court of Texas has applied § 145 of the Restatement. In *Gutierrez v. Collins*, 583 S.W.2d 312 (Tex.1979), the Supreme Court adopted the "most significant relationship" test of § 145 to replace the *lex loci delicti* rule that had previously obtained in Texas. The case arose from an automobile accident in Chihuahua, Mexico between the parties, who were both Texas residents. The district court, under the *lex loci* rule, determined that the laws of Mexico concerning damages should govern the lawsuit, and the Court of Civil Appeals affirmed the judgment of the district court. The Supreme Court reversed the judgments and ordered the district court to employ the Restatement's "most significant relationship" test to determine whether the Texas or Mexico law of damages applied to the controversy. Although the court stated that all conflicts cases "sounding in tort" would thereafter be governed by § 145 of the Restatement, *Gutierrez*, upon its facts, holds only that the

"most significant relationship" test controls the selection of law in the damage element in a tort case.

*Robertson v. McKnight*, 609 S.W.2d 534 (Tex.1980), involved a lawsuit between the estates of a New Mexico husband and wife based on the husband's alleged negligent piloting of an airplane which resulted in the death of the couple in a crash in Texas. New Mexico law allows interspousal suits based on negligence while Texas retains interspousal tort immunity for negligence. The Supreme Court held that § 169 of the Restatement concerning the tort-related issue of intra-family immunity commanded that the correct law be chosen according to the § 145 "most significant relationship" test. The Court's application of this test resulted in the choice of New Mexico law which permitted the interspousal negligence suit.

▉▉ Neither *Gutierrez* nor *Robertson* hold that contractual releases of tort liability are governed by the "most significant relationship" test of § 145 of the Restatement, and we find of no Texas case which holds that such contractual releases from tort liability are governed by the test.[1] Until the Supreme Court expressly decides that conflicts cases involving tort releases are to be governed by the § 145 test, this Court will continue to apply the *lex loci contractus* rule of *Austin Building Co. v. National Union Fire Insurance Co., supra.* Application of the rule in this case, as stated above, results in construction of the release under Texas law, since Texas is the state where the settlement agreement between the parties was made, and the agreement is silent as to which state law will control the interpretation of the contract's provisions.

1. This Court recognizes that § 170(2) of the Restatement (Second) of Conflict of Laws commands the "most significant relationship" test of § 145 be applied to determine which state's law "determines whether a particular instrument is a release or a covenant not to sue with respect to joint tortfeasors who are not parties to the instrument." This provision conflicts to

**B. Effect of Release under Texas Law**

Until 1971, the courts of this state applied the "unity of release" rule which required release of *all* tortfeasors if any one of the tortfeasors was released by a plaintiff. The Supreme Court rejected the "unity of release" rule in *McMillen v. Klingensmith*, 467 S.W.2d 193 (Tex.1971). In *McMillen*, the injured plaintiff released the other driver involved in the accident. The plaintiff subsequently sued two physicians for malpractice in the treatment of her injuries resulting from the collision. The physicians obtained a summary judgment in the trial court based on plaintiff's release of the other driver in the automobile accident, and the Court of Civil Appeals affirmed that judgment. In reversing the judgments of both courts, the Supreme Court held that the "unity of release" rule would no longer be followed in Texas. The Court discussed *Young v. State*, 455 P.2d 889 (Alaska 1969), which held that a release discharges only those parties specifically named in the release document. The court commented that the Alaska rule was fairer, easier to apply, and avoided the pitfalls of inquiry into the subjective intent of the party executing the release. In adopting this rule for the courts of Texas, the Court "slightly" modified the Alaska rule by stating that a release only discharges those parties "named or *otherwise specifically identified*" in the release. *McMillen*, 467 S.W.2d at 196 (emphasis added).

Pursuant to *McMillen*, the parties specifically named in a release, of course, are discharged from liability. Several Courts of Civil Appeals, however, have differed in determining when a party not named in a release is "otherwise specifically identified." *See Lloyd v. Ray*, 606 S.W.2d 545 (Tex.Civ. App.1980, writ ref'd n. r. e.) (unnamed party to release not "otherwise specifically identified"); *Duke v. Brookshire Grocery*

some extent with the rule of *Austin Building Co.* that contracts are governed by the law of the state where the contract is made. As stated above, since a release is a contract, this Court will apply the contract choice of law rule of *Austin Building Co.* until the Supreme Court indicates an alternative choice of law rule should apply.

*Company,* 568 S.W.2d 470 (Tex.Civ.App. 1978, no writ) (same). *Contra Bell v. First National Bank,* 597 S.W.2d 521 (Tex.Civ. App.1980, no writ) (identification of unnamed party to release sufficiently specific).

■ In the case on appeal, the release discharged "any other corporations or persons whomsoever responsible therefor, whether named herein or not, from any and all claims of every kind and character whatsoever...." The release in general language effectively purports to discharge *any* individual or corporation from liability to Mrs. Duncan. Cessna, of course, is not named in the release and, in our view, is not "otherwise specifically identified." The requirement of *McMillen* that a party be named, or otherwise specifically identified, implies some character of identification that is a substitute for a name, but sufficiently particular so that a stranger to the release could readily identify the released party even though that party's name is lacking. Such specific identification is impossible under the facts of this appeal, even though Cessna admittedly comes within the general class released by the agreement.

## LIABILITY ISSUES

The plaintiffs' suits against Cessna were predicated upon a theory of strict products liability pursuant to § 402A of the Restatement (Second) of Torts (1965). The liability issues were tried under New Mexico law. The state of New Mexico has adopted the 402A theory of strict liability in products liability cases. *Stang v. Hertz Corp.,* 83 N.M. 730, 497 P.2d 732 (1972). Section 402A(1) states:

> One who sells any product in a *defective condition unreasonably dangerous* to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
>
> (a) the seller is engaged in the business of selling such a product, and

> (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
>
> (Emphasis added).

■ The nub of a 402A cause of action is whether a particular product is in a "defective condition unreasonably dangerous" to the user of the product. It is generally recognized that a product may be defective in three ways:

(1) *defective design* of the product,

(2) perfect design, yet *defective manufacture* of the product,

(3) *failure to warn* of a concealed hazard in the use of the product.

*See* W. Prosser, *Handbook of the Law of Torts* § 99, at 659 (4th ed. 1971).

By its first six points of error, Cessna argues that there is no evidence, or alternatively, insufficient evidence to support jury findings that:

(1) the seats in the Cessna aircraft were defectively designed,

(2) the seats were defectively manufactured,

(3) any manufacturing or design defect was a proximate cause of the death of the plaintiffs' decedents.

This appeal falls within a category of cases under § 402A known as "crashworthiness" cases. The central issue in this class of cases is whether the manufacturer should be held liable for a defect in a product when the defect has not caused the initial collision, but instead enhances the injuries one sustains from the accident. A classic example of a "crashworthiness" factual situation is a roof which collapses during a rollover of the automobile, causing serious additional injuries to an occupant. Manufacturers argue they should not be liable for enhanced injuries from initial accidents, because wrecks and collisions are not intended uses of vehicles.

Plaintiffs, however, argue that collisions are forseeable in the normal course of handling of automobiles, so a manufacturer should be required to build a "crashworthy" vehicle that reasonably protects its occu-

pants from injury during an accident.[2] The courts of New Mexico have not decided a "crashworthiness" case,[3] although several cases decided by courts of that state articulate principles applicable to the points of error raised by Cessna in this case.

Cessna claims under the New Mexico law applicable to this case there is no evidence, or insufficient evidence, to support the jury finding that the seats in the aircraft were defectively designed. In this regard, Cessna concedes that New Mexico has adopted § 402A as the governing standard in products liability cases, but argues the courts of that state have not recognized the "crashworthiness" doctrine. In their briefs, the parties admit there is no reported New Mexico decision discussing the "crashworthiness" doctrine, but Cessna cites *Skyhook Corp. v. Jasper*, 90 N.M. 143, 560 P.2d 934 (1977), as authority that the Supreme Court of New Mexico will not require manufacturers to design products to guard against unintended but foreseeable mishaps. *Skyhook* was a wrongful death action against a crane manufacturer in which the plaintiff alleged the crane was unreasonably dangerous due to a design defect which omitted electrical insulation from the crane boom. Plaintiff's decedent was electrocuted when the crane touched a high power line at a construction site. Cessna argues this case holds that under New Mexico law a manufacturer is not liable for the injuries caused by an unintended use (*e.g.*, wreck) of a product, even if the unintended use were foreseeable by the manufacturer. However, the court's opinion does not discuss unintended use. The holding of the court is that the failure of the crane manufacturer to include an optional safety device on the crane (insulation) did not constitute a design defect which was unreasonably dangerous under § 402A. *Id.* 560 P.2d at 938.

■ Contrary to Cessna's assertion, New Mexico law does permit recovery from a manufacturer for injuries resulting from an unintended but foreseeable use or misuse of a product. In *First National Bank, Albuquerque v. Nor-Am Agricultural Products, Inc.*, 88 N.M. 74, 537 P.2d 682 (Ct.App.1975) a grain dealer inadvertently mixed grain for seed which had been treated with chemicals with grain for animal feed. A farmer purchased the contaminated grain, fed it to his animals, slaughtered the animals, and allowed his family to consume the meat. Members of the family suffered severe poisoning from the high mercury content of the contaminated grain. The court acknowledged that a § 402A cause of action existed against the manufacturer of the grain, notwithstanding the fact that consumption of the treated feed by animals was clearly an unintended use of the product. Since the unintended use was foreseeable by the manufacturer, he could be held liable for marketing the grain. This Court has concluded, upon authority of *Nor-Am*, that a New Mexico court could determine a manufacturer is liable for injuries sustained by an occupant of a car or airplane in a crash, even though a wreck is obviously not an intended use of an automobile or aircraft. *Cf. Richards v. Upjohn Co.*, 95 N.M. 675, 625 P.2d 1192, 1196–98 (Ct.App.1980) (where the court held a drug manufacturer liable despite a physician's misuse of the drug). As further authority for this view, the New Mexico Supreme Court now has adopted jury instructions which explicitly recognize the "crashworthiness" doctrine in that state. *See* New Mexico Uniform Jury Instructions—Civil 14.3 (1980) (Committee Comment).

Plaintiffs introduced evidence supporting the jury's answer that the seats in the airplane were defectively designed. Thomas Grubbs, a mechanical engineer for the National Aeronautics and Space Administration, testified that the angled seat legs failed when they were subjected to a rela-

---

2. This view was articulated first in *Larsen v. General Motors Corp.*, 391 F.2d 495 (8th Cir. 1968), and adopted in Texas in *Turner v. General Motors Corp.*, 514 S.W.2d 497 (Tex.Civ.App. 1974, writ ref'd n. r. e.).

3. A recent case from the 10th Circuit involving an airplane crash has recognized a cause of action in New Mexico based on a "crashworthiness" theory. *Meil v. Piper Aircraft Corp.*, 658 F.2d 787 (10th Cir. 1981).

tively light force. The angled seat leg is an inferior design, according to Grubbs, in comparison to a straight leg. In Grubbs' opinion, the seat legs should have been designed to withstand about twenty-five "G's".[4] The seat was five times weaker with the unbraced angled leg.

V. S. Hanagud, professor of aerospace engineering at Georgia Tech, corroborated Grubbs' testimony. In addition, he testified that the sole reason for the deaths of Parker and Smithson was the failure of the seats. Professor Gerald Snyder of the University of Michigan, an expert on human tolerance in crashes, also testified that the failure of the airplane seats to remain secure in the cabin resulted in the fatal injuries.

Cessna's engineers admitted that Cessna had not included a seat brace on the model of airplane involved in this lawsuit and it was within their capacities to design a brace that would have allowed the seats in this airplane to have withstood the crash. Also, the proof was that seats in Cessna airplanes manufactured before and after the model aircraft here involved contained a brace in the seat base and that the brace did make those seats stronger.

Cessna, of course, introduced evidence through its experts that the accident could not have happened according to plaintiffs' theory. Cessna also claims that inconsistencies in plaintiffs' expert testimony indicate that plaintiffs' theory of the defect and accident is untenable.

With respect to proximate cause, Cessna insists it should not be held liable, as a matter of law, for the deaths of Smithson and Parker because the series of events leading to the deaths of the two men was totally unforeseeable by the defendant. The heart of Cessna's argument is that although the seat defect may have been the cause-in-fact of the passengers' deaths, the manner in which the seat failure caused the fatal injuries was not foreseeable, and thus not the *proximate* cause of the harm.

■ Assuming *arguendo* that Cessna is correct in claiming that foreseeability of the manner of harm is a prerequisite in strict liability cases, Cessna is still responsible under these facts. Undoubtedly, Cessna could foresee that if the seats in the aircraft failed to remain secure in a low-speed accident, the occupants of the plane could be subjected to a high risk of serious injury or death. The fact that the ultimate foreseeable harm resulted from a chain of circumstances that Cessna characterizes as "bizarre" will not relieve it of liability. A defendant is not required to foresee the precise course or manner of circumstances leading to injury in order for the law to impose liability under either a negligence or strict liability cause of action. It is sufficient that the *risk* of harm or injury is foreseeable. In Texas and New Mexico negligence cases, the courts have imposed liability wherein the ultimate harm is foreseeable by the defendant, although the chain of events leading to that harm was unusual or extraordinary.[5]

4. A "G" is a scientific unit of measure "used to measure the force on a body undergoing acceleration and expressed as a multiple of the body's weight." Webster's New World Dictionary of the American Language 568 (2nd College ed. 1978). Thus, a 200 pound person being accelerated to 4 "G's" has a force of 800 pounds exerted on his body.

5. *E.g., Clark v. Waggoner*, 452 S.W.2d 437, 439 n. 2 (Tex.1970); *Carey v. Pure Distrib. Corp.*, 133 Tex. 31, 124 S.W.2d 847 (1939) (oilcan lid from barrel fell off passing truck and hit plaintiff, who was camping beside road, in the head; truck owner liable); *Byrnes v. Stephens*, 349 S.W.2d 611 (Tex.Civ.App.1961, no writ) (hit and run driver struck a defendant's parked car, which struck plaintiff; liability imposed);

*Hines v. Morrow*, 236 S.W. 183 (Tex.Civ.App. 1921, writ ref'd) (plaintiff's leg was stuck in mudhole in public road which defendant had duty to repair; injury occurred when rope used to tow stranded car out of mud wrapped around plaintiff's leg; defendant held liable); *Ortega v. Texas-New Mexico Ry. Co.*, 70 N.M. 58, 370 P.2d 201 (1962) (railroad held liable for failure to warn worker of open and obvious hole which was accidentally covered by piece of cardboard which fell over hole during unloading); *Gilbert v. New Mexico Const. Co.*, 39 N.M. 216, 44 P.2d 489 (1935) (construction company liable for fire damage to house because company cut water line during street work, firemen were unable to put out the small fire due to lack of water pressure).

The Supreme Court of New Mexico has promulgated uniform jury instructions for use in certain classes of civil cases. The element of foreseeability has never been a part of the New Mexico jury instructions defining the term "proximate cause," even in negligence cases. New Mexico Uniform Jury Instruction—Civil 3.8 (formerly New Mexico U.J.I.—Civ. 12.10).[6]

■■■ At time of trial of these cases, according to our research, there was no requirement in New Mexico law that the element of foreseeability be submitted in strict liability cases.[7] The point is overruled.

### EVIDENTIARY ISSUES

A. Smithson Case

In points of error twelve through seventeen Cessna complains of the rulings of the district court that allowed experts to testify for Mrs. Smithson as to her husband's future earning capacity as a commercial pilot, had he survived the wreck and pursued that calling. There is scant evidence that Smithson intended to become a commercial airplane pilot. In that connection, Mrs. Smithson stated that her husband intended to make a career of flying. Assuming, however, there was sufficient evidence of that intention, there are several problems concerning Mrs. Smithson's efforts to prove the earnings of a commercial airline pilot.

New Mexico law limits recovery in wrongful death actions to lost pecuniary benefits to the decedent's estate, rather than the broader recovery allowed in Texas. Mrs. Smithson, apparently surprised by the district court's ruling that New Mexico law was applicable, attempted to reconstitute her case for damages under New Mexico law by introducing evidence that Mr. Smithson had intended to become a commercial pilot and tendering expert evidence as to the expected salary of a commercial pilot. Cessna objected to introduction of expert testimony concerning commercial pilots' earnings on several grounds.

One such ground was that Cessna was unfairly surprised and prejudiced by admission of testimony of commercial pilots' earnings. Mrs. Smithson tendered the testimony of an economist, Dr. George Benz, as to the salary range and qualifications of professional airline pilots. Cessna objected to the tender upon the basis Benz was not qualified to give his opinion on that subject and his opinion was based solely on hearsay. Cessna's objections were overruled.

Mrs. Smithson then tendered, mid-trial, the testimony of George Baumann, a Braniff airlines pilot, as to the expected compensation of a commercial airline pilot and the qualifications required for one seeking a commercial pilot's position. Cessna objected to the tender claiming unfair surprise because Mrs. Smithson had not disclosed in pre-trial interrogatories that Baumann would be called as an expert witness. The district court postponed Baumann's testimony over the weekend to allow attorneys for Cessna to depose him. Baumann was deposed and attorneys for Mrs. Smithson were allowed over Cessna's objection to read portions of the deposition into evidence.

■■■ The problem for determination is whether the district court abused its discretion in permitting an expert witness

---

6. In negligence cases, New Mexico includes foreseeability as an element of the definition of the term "negligence." New Mexico Uniform Jury Instructions—Civil 16.1.

7. Since the trial of the case presently under consideration, the Supreme Court of New Mexico has adopted jury instructions for products liability cases. A special instruction on foreseeability has been drafted and states:

The supplier has the duty to consider foreseeable risks of injury. This duty is limited to use of the product for a purpose or in a manner which could reasonably be foreseen.

Where an injury is caused by a [risk] [or] [misuse of the product] which was not reasonably foreseeable to the supplier, he is not liable.

New Mexico Uniform Jury Instructions—Civil 14.3 (1980) (brackets in original). The committee comment to this instruction states that "the foresight required for liability is foresight of the use of the product which gives rise to an unreasonable risk of injury. If the use and risk are foreseeable, plaintiff need not prove *that the particular harm was foreseen*." (emphasis added).

whose identity was not disclosed in pre-trial interrogatories to testify *by deposition* over Cessna's objection based on surprise.[8] The Supreme Court of Texas has emphasized necessity for timely disclosure to opposing counsel of the identity of expert witnesses to be called at trial. *Werner v. Miller*, 579 S.W.2d 455 (Tex.1979); *Barker v. Dunham*, 551 S.W.2d 41 (Tex.1977). An undisclosed expert may be allowed to testify if the objecting party's interrogatory did not specifically request disclosure of *expert* witnesses to be called at trial. *Meyerland Co. v. Palais Royal of Houston, Inc.*, 557 S.W.2d 534, 538 (Tex.Civ.App.1977, no writ). However, the trial court may exclude expert testimony if the expert's identity was not disclosed in a properly phrased interrogatory. *Trubell v. Patten*, 582 S.W.2d 606, 611 (Tex.Civ.App.1979, no writ). A trial court may properly grant additional time for preparation to a party who claims surprise resulting from the offer of testimony of an undisclosed expert witness. *See Mobile America Sales Corp. v. Gradley*, 612 S.W.2d 625, 629 (Tex.Civ.App.1980, no writ). Furthermore, a party claiming surprise by an undisclosed expert witness may be required to take some steps, such as deposing the witness, to alleviate the surprise despite the other party's failure to properly disclose the witness's identity. *See Allied Finance Co. v. Garza*, 626 S.W.2d 120, 124 (Tex.Civ.App. 1981, no writ)[9].

There is little doubt that Cessna was surprised by Mrs. Smithson's offer of Baumann's testimony. Cessna claims, plausibly, that it would have pursued a different pre-trial preparation strategy had it known Baumann's identity and the evidence he was prepared to give. Considering the circumstances, the district court properly gave Cessna an opportunity to depose Baumann before admitting his testimony to the jury. Through the deposition Cessna was able to cross-examine Baumann on his expert qualifications and the matters on which he intended to testify, thus alleviating, somewhat, the harm resulting from surprise, so far as discovery can do. Discovery was not the only aspect of the problem presented by Baumann's testimony. Cessna had to meet the new matter, by its own evidence, if it could; or, at minimum, test it by intelligent cross-examination.

█ Nonetheless, the court's admission of Baumann's testimony, in effect, permitted Mrs. Smithson to profit from her viola-

**8.** Prior to 1981, the Texas Rules of Civil Procedure did not provide specific sanctions for a party's failure to identify a witness not disclosed in answers to interrogatories requesting the names of witnesses to be called at trial. Exclusion of testimony by an undisclosed witness was recognized as a proper sanction in *Trubell v. Patten*, 582 S.W.2d 606 (Tex.Civ. App.1979, no writ); *see also Texas Employers' Ins. Ass'n v. Meyer*, 620 S.W.2d 179 (Tex.Civ. App.1981, no writ).

Furthermore, Baumann would not have been permitted to testify had the 1981 amendment of Tex.R.Civ.P. 168 been in effect at time of trial. Part 7(a)(3) of the new rule requires a party calling an expert witness, not disclosed in prior interrogatories, to disclose the witness's identity at least 14 days prior to trial except on leave of court. Failure to make this disclosure bars admission of the expert's testimony unless good cause is shown. Tex.R.Civ.P. 168.

**9.** The federal courts have grappled with this same problem, since Rule 26(b)(4) of the Federal Rules of Civil Procedure permits discovery of the identity of experts a party expects to call as trial witnesses. Testimony of an undisclosed expert was held properly admitted in *Texas &*

*Pacific Ry. Co. v. Buckles*, 232 F.2d 257, 260 (5th Cir. 1956), because the offering party had not known the expert was a material witness until the prior week. Undisclosed expert testimony has also been permitted when the expert's testimony was merely cumulative, did not advance a new theory, and the opposing party failed to state the precise harm resulting from admission of the testimony. *Dychalo v. Copperloy Corp.*, 78 F.R.D. 146, 148–49 (E.D. Pa.1978).

The offer of an undisclosed expert's testimony offends the liberal policy of the federal discovery rules, which are designed to prevent trial by surprise. District courts erroneously permitted testimony by experts who were undisclosed in interrogatories in *Smith v. Ford Motor Co.*, 626 F.2d 784 (10th Cir. 1980); *Shelak v. White Motor Co.*, 581 F.2d 1155, 1157–60 (5th Cir. 1978); *Weiss v. Chrysler Motor Corp.*, 515 F.2d 449, 453–57 (2nd Cir. 1975). District courts properly excluded testimony of experts whose identities were not disclosed until trial in *Davis v. Marathon Oil Co.*, 528 F.2d 395, 403–04 (6th Cir. 1975), and *Tabatchnick v. G. D. Searle & Co.*, 67 F.R.D. 49, 52–5 (D.N.J.1975).

tion of the discovery rules. The harm suffered by Cessna from the mid-trial admission of Baumann's testimony, despite its opportunity to depose him, was doubtless considerable. Baumann's testimony as to the earnings of a commercial airline pilot effectively doubled the permissible range of damages the jury could have, and did, award Mrs. Smithson. After Baumann's deposition, counsel for Cessna plainly needed an opportunity to verify Baumann's testimony respecting the qualifications and salary levels of commercial pilots and prepare to meet and test it. Had Cessna learned that Baumann was not correct, counsel then would have had the task of locating a qualified expert witness who could form an opinion and testify, almost instantly, at the trial or by deposition. Permitting Cessna to depose Baumann over a weekend recess during the trial was an insufficient measure to alleviate the problems confronting Cessna from admission of Baumann's testimony.[10] Accordingly, we hold the district court abused its discretion in permitting Baumann to testify by deposition.

Cessna complains further that the district court erred in refusing to admit evidence it tendered to show Smithson's poor performance as a pilot to rebut Baumann's testimony as to earnings of commercial pilots. Mrs. Smithson endeavored to prove Benjamin Smithson's intention to become a commercial airline pilot, his qualifications for that job, and the expected salary level he would have attained as a commercial pilot. Baumann, the "surprise expert," and Benz, the economist, both testified to the likelihood that a person with Smithson's qualifications would have become a commercial pilot. To rebut this testimony, Cessna offered to introduce evidence that Smithson had almost crashed his Cessna a short time prior to the fatal crash.

Mrs. Smithson objected to the tender claiming, correctly, that negligence is not an issue in a products liability case. Yet Cessna offered the evidence not to prove Smithson's negligence, but to rebut the theory that Smithson could and would have become a commercial airline pilot and Cessna would have agreed to an appropriate limiting instruction.

■ In wrongful death cases, in general, "compensation consists in the pecuniary loss sustained by the parties aggrieved, and any fact which would have a tendency to show and explain the conduct, character, and business of the deceased could and would doubtless, serve some purpose in arriving at the amount of this compensation." *Standlee v. St. Louis & S.W. Ry. Co.*, 25 Tex.Civ. App. 340, 60 S.W. 781 (1901, no writ). More in point, evidence is admissible in wrongful death cases to show that the deceased intended to change occupations. *See Burlington-Rock Island Ry. Co. v. Davis*, 123 S.W.2d 1002 (Tex.Civ.App.1939, writ dism'd); *see also Wichita Valley Ry. Co. v. Williams*, 6 S.W.2d 439 (Tex.Civ.App.1928, writ ref'd). Conversely, in such cases the defendant in rebuttal, may show, if the facts warrant, the deceased planned to do nothing, or that he was not able to work at all, or that he had been without means to keep himself in a gainful occupation. *Burlington-Rock Island Ry. Co. v. Davis*, 123 S.W.2d at 1005–6.

Mrs. Smithson was entitled to offer evidence, as she did, that her husband intended to better himself economically by changing occupations to become a commercial airline pilot. Likewise, Cessna should have been accorded the opportunity to rebut that contention. This Court has concluded the tendered evidence was admissible as against Mrs. Smithson's objection since it bore upon the earning capacity of the decedent. Had Smithson performed poorly as a pilot, as the proferred evidence tended to show, then the chance that he would have been hired as a commercial pilot would logically have been diminished according to whatever weight the jury choose to give such evidence.

10. Curiously, Mrs. Smithson seeks to justify the court's admission of the surprise testimony by placing the responsibility for the surprise witness on Cessna. She claims the surprise testimony was necessary only after Cessna objected on the grounds of hearsay to the opinion of the economist as to pilot's salaries.

The jury answered that the pecuniary benefits which might reasonably be expected by Smithson's family, had he lived, were $1,200,000. Smithson's income tax returns for the years 1972 through 1976 showed a low of $10,000 and a high of $13,000 annual income. Mrs. Smithson's economist testified the present value of lost pecuniary benefits to Smithson's estate based on the average of his 1972–1976 income was $385,286. In addition, the economist estimated present values of Smithson's future earnings as a commercial airline pilot at $1,475,900, based on a yearly salary of $46,253, and as a corporate pilot at $1,394,000, based on a yearly salary of $32,500.

The jury, in answering the damage issue for Smithson's estate for $1,200,000, obviously believed that Smithson would become a commercial or corporate pilot. This answer demonstrates the harm to Cessna flowing from the erroneous refusal by the district court to admit the evidence from which the jury could have concluded that Smithson was a poor pilot. Had the jury had the benefit of that evidence, it could well have concluded that Smithson would never have had the opportunity to become a commercial pilot.

■ As previously written, this Court has concluded that the district court erred in admitting the testimony of Baumann relating to the earnings of commercial pilots. The district court erred further in refusing to admit evidence that Smithson had performed poorly as a pilot. In our view, such errors were harmful within the meaning of Tex.R.Civ.P. 434, and require reversal.

## B. Duncan Case

By cross-points, Cessna complains that the jury's award to Mrs. Duncan was supported by no evidence or insufficient evidence. The jury's verdict awarded Mrs. Duncan $1,000,000 as reasonable compensation for the lost pecuniary benefits her family sustained as a result of her husband's death. The parties agree the district court properly charged the jury on the measure of damages applicable in wrongful death cases tried under New Mexico law.

The Supreme Court of New Mexico, in *Varney v. Taylor*, 77 N.M. 28, 419 P.2d 234 (1966) held that a recovery in a wrongful death case is for *lost pecuniary benefits* to the decedent's estate, as measured by the anticipated earnings of the deceased. Furthermore, anticipated earnings are computed as *net income* the decedent's beneficiaries would have received from the deceased, discounted for taxes and other deductions from income, had the decedent lived. *Id.* 419 P.2d at 239. Cessna argues the jury answer of $1,000,000, based on the expected pecuniary benefits Mrs. Duncan and her children would have received had Parker lived, is without support in the evidence.

James Parker was part owner of a farm supply company in Clovis, New Mexico, until January 1976, when he acquired full interest in the business. The evidence indicated Parker's salary for 1976, the year preceding his death, was $70,000. In the five prior years, Parker's earnings ranged from a high of $22,900 to a low of $9,150.

Cessna states that Mrs. Duncan's expert used Parker's 1976 salary as a base to calculate his prospective future earnings, and argues that Parker's income that year was an aberration. Cessna contends the evidence indicates Parker drained the cash assets of the firm to pay the inflated salary. Parker's former partner, Arthur Moorman, testified he sold his half interest to Parker in 1976 for $150,000, and that he would have bankrupted the business had he paid himself a $70,000 per year salary.

Mrs. Duncan's economist admitted he computed Parker's future earnings based only on his 1976 salary. The justification he gave for using 1976 as a base, rather than using an average income based on prior years, is that Parker's earnings potential materially changed when he became sole owner of the business.[11]

---

11. On direct examination, the economist stated his rationale for using only 1976 as a base year:

Q [Plaintiff's attorney] And likewise, Doctor, insofar as using only the '76 returns, you were furnished with returns from other

The fact the economist confined his computation of Parker's future earnings solely to 1976 tended to discredit his opinion as an accurate and dispassionate effort to predict the decedent's future earnings. Such selective methodology was certainly open to attack. Cessna availed itself of the opportunity to demonstrate by Moorman's testimony that the probabilities were that Parker could not and would not thereafter receive earnings from the feed store equal to those of 1976. Also, the bookkeeper of the feed store testified that Parker raised his salary from $700 per month to $4,000 per month and paid himself a $37,000 bonus when he became full owner in 1976, and that his actions effectively depleted the cash assets of the business.

 Cessna did not object to the tender of the expert opinion based upon Parker's 1976 salary. The basic factual issue that the jury was required to resolve was whether Parker could have continued to pay himself a salary from the feed store equal to or above the 1976 salary. The jury believed that he could. The weight and probative force of evidence, of course, is entirely for the jury. Likewise, the jury is the exclusive judge of the credibility of witnesses and the weight to be attached to their testimony. *Benoit v. Wilson*, 150 Tex. 273, 239 S.W.2d 792 (1951). The jury may believe a witness although he has been contradicted, and, likewise, the jury may believe the testimony of one witness and reject the testimony of other witnesses. *Biggers v. Continental Bus System*, 157 Tex. 351, 303 S.W.2d 359 (1957). The law does not attempt to tell jurors what amount or kind of evidence ought to produce a belief in their minds. The jury may accept part of the testimony of one witness and disregard the remainder. 1 R. Ray, *Texas Law of Evidence* § 3 (3rd ed. 1980). The answer

of the jury is supported by some evidence and is not so contrary to the great weight and preponderance of the evidence so as to be manifestly unjust.

## CESSNA'S RIGHT OF CONTRIBUTION

By cross-points sixteen and seventeen Cessna contends that the district court erred in granting Mrs. Duncan's motion "to strike" its counterclaim asserting a right to contribution from Smithson's estate for any damages it might be required to pay Mrs. Duncan. A motion "to strike" a pleading is unknown in the state practice. Nevertheless, this Court will regard Mrs. Duncan's motion "to strike" as a special exception and the district court's action as an order sustaining the special exception.

Cessna claims it was entitled to plead and prove that Smithson's negligence in piloting the plane caused the crash, making him a joint tortfeasor with Cessna in causing the death of Parker. Cessna's argument is that if it established that Smithson were a joint tortfeasor, under Texas law it would be entitled to contribution from Smithson's estate for any damages it was required to pay Mrs. Duncan. Cessna reminds the Court that Mrs. Duncan's settlement agreement with Air Plains West, Inc., also expressly released Smithson from any and all liability for the death of Parker. Accordingly, it was entitled to plead and attempt to prove that Smithson was a joint tortfeasor so as to establish its right to contribution and thereby limit its liability to Mrs. Duncan to one-half of the damages eventually recovered by her. *General Motors Corp. v. Simmons*, 558 S.W.2d 855 (Tex.1977); *Palestine Contractors, Inc. v. Perkins*, 386 S.W.2d 764 (Tex.1964). *Palestine Contractors, Inc.* established the rule that the non-settling joint tortfeasor's right to contribution from the

years, why did, why were they not persuasive in your expertise [sic] judgment? Why were they not used?

A [The economist] The one in the previous years was totally different occupation. He was in the gertilizer [sic] business in '76, and it is a whole new area of economic activity for him, and so therefore, that becomes the base year.

Q [Plaintiff's attorney] You recognize, of course, then that other years for a number of years he was at least a fertilizer salesman, but you are saying he was an entrepreneur with his own corporation the last year of his life as a fertilizer supplier?

A [The economist] Yes, sir.

settling joint tortfeasor is satisfied by reducing by one half the damages the non-settling tortfeasor is required to pay the plaintiff.

The right of contribution between joint tortfeasors did not exist at common law. W. Prosser, *Handbook of the Law of Torts* § 50, at 305 (4th ed. 1971). In 1917, the Legislature enacted art. 2212 granting the right of contribution between joint tortfeasors. That statute provides in part:

> Any person against whom, with one or more others, a judgment is rendered in any suit on an action arising out of, or based on tort, *except in causes wherein the right of contribution or of indemnity, or of recovery, over, by and between the defendants is given by statute or exists under the common law*, shall, upon payment of said judgment, have a right of action against his co-defendant or co-defendants and may recover from each a sum equal to the proportion of all of the defendants named in said judgment rendered to the whole amount of said judgment.

Tex.Rev.Civ.Stat.Ann. art. 2212 (1971) (emphasis added). The effect of art. 2212 is to afford the right of contribution to tortfeasors who stand *in pari delicto* to one another except where the right of indemnity exists at common law. *Austin Road Co. v. Pope*, 147 Tex. 430, 216 S.W.2d 563, 565 (1949). In addition, the statute permits negligent and strictly liable joint tortfeasors to apportion damages between themselves. *General Motors Corp. v. Simmons*, 558 S.W.2d at 862. Cessna argues although it may be strictly liable to Mrs. Duncan for Parker's death, it is entitled to plead and prove that Smithson's negligence was a concurrent proximate cause of Parker's death, therefore making Smithson a joint tortfeasor *in pari delicto* with Cessna and liable for contribution under art. 2212. *Austin Road Co. v. Pope, supra*.

Mrs. Duncan responds that Smithson was not *in pari delicto* with Cessna. She argues that despite Smithson's negligence as to Parker, Smithson would be entitled to indemnity from Cessna for all damages paid to Mrs. Duncan for Parker's death. If Smithson is entitled to indemnity from Cessna, Cessna would be precluded from obtaining contribution from Smithson, since the right of contribution allowed by art. 2212 applies only if indemnity cannot be had between the joint tortfeasors.

Mrs. Duncan argues Cessna would be required to indemnify Smithson because Smithson is the user or consumer of a defective product which injured a third party (Parker). *See Heil Co. v. Grant*, 534 S.W.2d 916, 926–27 (Tex.Civ.App.1976, writ ref'd n. r. e.); *see generally Bell Helicopter Co. v. Bradshaw*, 594 S.W.2d 519, 535 (Tex.Civ. App.1979, writ ref'd n. r. e.).

 However, the Supreme Court, in *Austin Road Co. v. Pope, supra*, stated the test to determine whether a party is entitled to indemnity is whether that party, in a separate lawsuit, would have an actionable claim against the party *from whom* indemnity is sought. Applying this test to the present case, Smithson's estate would have a strict liability cause of action against Cessna for Smithson's death. However, Smithson's estate would have no cause of action against Cessna for economic loss it suffered when it settled with *Parker's* estate. Economic loss is not recoverable in a 402A strict products liability cause of action. *See General Motors Corp. v. Simmons*, 558 S.W.2d at 860.

Since Smithson's estate would have no cause of action against Cessna, it has no right of indemnity against Cessna. Therefore, art. 2212 applies and Cessna would be entitled to contribution should it prove that Smithson was negligent and that negligence was a concurrent cause of Parker's death.

 Should New Mexico law be regarded as determinative, this Court has concluded under that law, Cessna should have had the opportunity to plead and attempt to prove that Smithson was Cessna's joint tortfeasor. The New Mexico legislature enacted the original version of the Uniform

Contribution Among Tortfeasors Act.[12] N.M.Stat.Ann. 41–3–1 to –3–8 (1978). A joint tortfeasor may recover contribution from other joint tortfeasors after he has paid the full common liability or more than his pro rata share. N.M.Stat.Ann. art. 41–3–2 (1978). Cessna should be entitled to have a determination of whether Smithson was a joint tortfeasor. If Smithson were a joint tortfeasor, Cessna would have the right of contribution under the New Mexico statute. New Jersey, like New Mexico, has adopted the original act, and the New Jersey Supreme Court has determined that negligent and strictly liable tortfeasors may be "joint tortfeasors" within the meaning of the Act. *Cartel Capital Corp. v. Fireco of New Jersey*, 81 N.J. 548, 410 A.2d 674, 684 (1980).

Although this Court has treated the major questions in dispute, the parties have other points of error and cross-points. Such other points and cross-points have been considered, all are lacking in merit and all are overruled.

Since cross-points sixteen and seventeen are meritorious, this Court may not render judgment for Mrs. Duncan in the sum answered by the jury. As we have held, Cessna must be accorded an opportunity to plead and attempt to prove that Smithson was a joint tortfeasor with Cessna so as to establish a right to contribution. Accordingly, the take nothing judgment against Mrs. Duncan is reversed and the cause is remanded with the following instructions: Cessna shall be accorded an opportunity to plead and prove facts supporting its claim for contribution. Should Cessna be successful in that effort, the district court will render judgment for Mrs. Duncan for $500,-000. Should Cessna not succeed in obtaining fact findings supporting its claim of contribution, the district court will render judgment for Mrs. Duncan for $1,000,000. The judgment for Mrs. Smithson and her children is reversed and that cause is remanded for new trial. Tex.R.Civ.P. 434.

12. The Act has been substantially revised after its adoption by the New Mexico Legislature. See Unif. Contribution Among Tortfeasors Act, 12 U.L.A. 57, 57, 62 (1975).