**Kenneth D. McMILLEN et ux., Petitioners,**

v.

**Dr. William KLINGENSMITH et al.,
Respondents.**

No. B–2203.

Supreme Court of Texas.

May 12, 1971.

Wheeler, Watkins, Hubbard, Patton & Peek, James R. Hubbard, Texarkana, Fitzjarrald Poole, Edward L. Poole, Amarillo, for petitioners.

194

Stone, Stone & Chambers, Ben H. Stone, Jr. and John C. Chambers, Amarillo, for respondents.

POPE, Justice.

Joyce Lynn McMillen and husband sued Dr. William Klingensmith and Dr. Henry E. Martinez for negligence in the treatment of Joyce McMillen's injuries which she suffered in an automobile collision with a car driven by William Robert Perkins. Mrs. McMillen and her husband released Perkins from all claims upon his payment of $7,900. The McMillens then instituted suit against the two physicians who moved for summary judgment grounded upon the release. The trial court and the court of civil appeals rendered judgment for the defendant doctors, holding that the release of the original tort-feasor operated to release the subsequent tort-feasors also. 454 S.W.2d 424. We reverse those judgments and remand the cause to the trial court.

The collision occurred on June 2, 1967. Mrs. McMillen was hospitalized in Clarendon, Texas, for emergency treatment, including an emergency tracheostomy. She was then transferred to an Amarillo hospital where the two defendant physicians treated her. On June 9, 1967, Mrs. McMillen was released from the hospital, and accompanied by a nurse, returned to her home in California.

On May 2, 1968, Mrs. McMillen and her husband, upon receipt of $7,900, signed a release which named Perkins only and discharged him

"from any and all actions, causes of action, claims, demands, damages, costs, loss of services, expenses and compensation, on account of, or in any way growing out of, any and all known AND UNKNOWN personal injuries and property damage resulting or to result from the accident that occurred on or about the 2nd day of June, 1967, at or near Clarendon, Texas.

I/we hereby declare and represent that the injuries sustained are permanent and progressive and that recovery therefrom is uncertain and indefinite, and in making this release and agreement it is understood and agreed that I/we rely wholly upon my/our own judgment, belief and knowledge of the nature, extent and duration of said injuries, * * *.

*   *   *   *   *   *

This release contains the ENTIRE AGREEMENT between the parties hereto, and the terms of this release are contractual and not a mere recital."

On May 22, 1969, the McMillens filed suit against Doctors Klingensmith and Martinez, asserting that their negligent diagnoses and treatment resulted in permanent damage to her larynx. The two doctors answered and moved for summary judgment, contending that the release of Perkins was also a release of them. The legal question presented is whether the McMillens may maintain an action for damages against the doctors for malpractice after releasing from liability the named tort-feasor whose conduct made the services of the doctors necessary.

Both parties before us recognize the significance of Cannon v. Pearson, 383 S.W.2d 565 (Tex.1964), in deciding the issue in this case. We granted the application for writ of error in that case believing that the issue stated above was presented for decision. However, we ultimately concluded that the trial pleadings and the summary judgment proofs were not directed to that issue.

In Cannon v. Pearson, *supra*, we reviewed the rule that a release of an original named tort-feasor also operates to release an unnamed negligent doctor, citing three Texas cases which had followed the rule. Those cases are, Sims v. Auringer, 301 S.W.2d 286 (Tex.Civ.App.1957, writ ref. n. r. e.); Borden v. Sneed, 291 S.W.2d 485 (Tex.Civ.App.1956, writ ref. n. r. e.); Phillips v. Wright, 81 S.W.2d 129 (Tex. Civ.App.1935, writ dis.). We then said

that the rule had been disavowed by a number of jurisdictions and wrote that the modern tendency "is to treat the older rule as an illegitimate off-spring of the rule that release of one joint tort-feasor releases all, which rule is itself condemned by some of our ablest scholars on the theory that the courts have confused release of a party with satisfaction of a cause of action."

We cited a number of precedents which had adopted or changed to the rule that the release of the original named tort-feasor did not necessarily release an unnamed subsequent tort-feasor. In addition to the cases cited in Cannon v. Pearson, *supra*, we now add Dickow v. Cookinham, 123 Cal.App.2d 81, 266 P.2d 63, 40 A.L.R.2d 1066 (1954); Kyte v. McMillion, 256 Md. 85, 259 A.2d 532 (1969); Smith v. Conn., 163 N.W.2d 407 (Iowa 1968); Steeves v. Irwin, 233 A.2d 126 (Me.1967); Galloway v. Lawrence, 263 N.C. 433, 139 S.E.2d 761 (1965); DeNike v. Mowery, 69 Wash.2d 357, 418 P.2d 1010 (1966); Rudick v. Pioneer Memorial Hosp., 296 F.2d 316 (9th Cir. 1961); Leech v. Bralliar, 275 F.Supp. 897 (D.Ariz.1967).

The rule that a release of an original tort-feasor also releases a malpracticing physician finds its basis in the broader common-law rule known as the unity of release rule. The unity of release rule is based upon the idea that there is such a unity of the obligation or injury that a release of one is release of all. After a re-examination of this common-law rule, we have now determined to place our decision in this case upon a broader base than that expressed by our dictum in Cannon v. Pearson.

The legal basis for the unity of release rule has been challenged by every legal scholar who has examined it. 4 Corbin, Contracts, Sec. 931–935 (1951); 1 Harper and James, The Law of Torts, Sec. 10.1 (1956); Prosser, Law of Torts, Sec. 46 (3d ed. 1964); Prosser, Joint Torts and Several Liability, 25 Cal.L.Rev. 413 (1937); Salmond, Torts, p. 90 (11 ed. 1953); Throckmorton's Cooley on Torts, Sec. 80 (1930); 2 Williston, Contracts, Sec. 338A (3d ed. 1959); Note, 17 Ill.L. Rev. 563 (1923).

Underlying much of the criticism is the idea mentioned in Cannon v. Pearson, *supra*, that there has been a confusion of satisfaction of a claim with release of a cause of action. As expressed by Prosser: "A satisfaction is an acceptance of full compensation for the injury; a release is a surrender of the cause of action, which might be gratuitous, or given for inadequate consideration." Prosser, Joint Torts and Several Liability, 25 Cal.L.Rev. 413, 423 (1937). Unless the settlement with one of the tort-feasors fully satisfies the injured party, the release of one party should, according to Prosser, release only the tort-feasor who makes the partial settlement.

Those jurisdictions which purport to follow the unity of release rule have, nevertheless, looked with favor upon devices, such as the "covenant not to sue" or a reservation of a cause against others, which are used to skirt the rule. Texas is among those jurisdictions which hold that such devices will save the cause against another tort-feasor when a release would be fatal to it. Riley v. Industrial Finance Service Co., 157 Tex. 306, 302 S.W.2d 652 (1957); Hunt v. Ziegler, 271 S.W. 936, *aff'd*, 280 S.W. 546 (Tex.Com.App.1926, jdgmt adopted); Pearce v. Hallum, 30 S.W.2d 399 (Tex.Civ.App.1930, writ ref.); Lone Star State Life Ins. Co. v. Foster, 250 S. W.2d 949 (Tex.Civ.App.1952, writ ref. n. r. e.); City of Coleman v. Kenley, 168 S.W. 2d 926 (Tex.Civ.App.1943, writ ref. w. o. m.); Cox v. Rio Grande Valley Telephone Co., 13 S.W.2d 918 (Tex.Civ.App.1929, writ dis.); Pennington v. Bevering, 9 S. W.2d 401 (Tex.Civ.App.), *aff'd on other grounds*, 17 S.W.2d 772 (Tex.Com.App. 1929, jdgmt adopted); St. Louis, I. M. & S. Ry. Co. v. Bass, 140 S.W. 860 (Tex.

Civ.App.1911, writ ref.); El Paso .& S. R. Co. v. Darr, 93 S.W. 166, 169 (Tex.Civ. App.1906, writ ref.); Blake v. Kansas City Southern Ry. Co., 38 Tex.Civ.App. 337, 85 S.W. 430 (1905, no writ); see, Barnett, Release of Joint Tort-Feasors in Texas, 36 Tex.L.Rev. 55 (1957).

These judicial efforts to avoid the harsh common-law rule have also been challenged for their artificial reasoning. They have been declared by the scholars cited above to be less than forthright, judicial fudging, and a trap for the unwary who do not notice in a document such nice distinctions. Breen v. Peck, 28 N.J. 351, 146 A.2d 665, 73 A.L.R.2d 390 (1958).

Mr. Justice Rutledge, while serving on the court of appeals for the District of Columbia wrote McKenna v. Austin, 77 U. S.App.D.C. 228, 134 F.2d 659, 148 A.L.R. 1253 (1943). He thoroughly examined the foundation and rationale of the unity of release rule. He said that it arose historically by an inappropriate transference of the metaphysics of the property concepts of joint estates and survivorship to the law of obligations independent of property. He summarized the practical reasons for abandoning the rule by saying:

> The rule's results are incongruous. More often than otherwise they are unjust and unintended. Wrongdoers who do not make or share in making reparation are discharged, while one willing to right the wrong and no more guilty bears the whole loss. Compromise is stifled, first, by inviting all to wait for the others to settle and, second, because claimants cannot accept less than full indemnity from one when doing that discharges all. Many, not knowing this, accept less only to find later they have walked into a trap. The rule shortchanges the claimant or overcharges the person who settles, as the recurring volume and pattern of litigation show. Finally, it is anomalous in legal theory,

giving tortfeasors an advantage wholly inconsistent with the nature of their liability.

The Supreme Court of Alaska, writing in Young v. State, 455 P.2d 889 (Alaska 1969), reviewed the several alternatives which that jurisdiction could adopt, and it chose the path of simplicity. It wrote:

> In our opinion the rule which will bring most clarity to this area of ambiguous and conflicting release rules is one under which a release of one tort-feasor does not release other joint tort-feasors unless such tort-feasors are specifically named in the release. We are of the further view that adoption of this rule will insure that the intent of the parties to the release is given effect and will greatly minimize the possibility of any party being misled as to the effect of the release.

The rule is a simple one. Unless a party is named in a release, he is not released. A rule of this type is fairer and easier to apply. It avoids many of the problems arising from the present rule which often requires proof by parol evidence of the releasor's subjective intent at the time the release was executed. With a slight modification we adopt the rule suggested by the Alaska court. We hold that a release of a party or parties named or otherwise specifically identified fully releases only the parties so named or identified, but no others. Our holding in this case shall not affect releases presently in existence where it appears from the language of the release and other circumstances that it was the intention of the releasor to release the named parties and other persons generally identified. The release presently before us names only William Robert Perkins and makes no reference to any other parties.

In holding as we do, we preserve the rule that a claimant in no event will be entitled to recover more than the amount required for full satisfaction of his dam-

ages. Bradshaw v. Baylor University, 126 Tex. 99, 84 S.W.2d 703 (1935). One of the problems considered by the court in McKenna v. Austin, *supra*, was that of disturbing the law concerning the adjustment of rights between tort-feasors after a release of one tort-feasor. In deciding *McKenna* both Justice Rutledge for the majority and Judge Stephens in dissent, discussed this problem in connection with their choice of the better rule. We regard this as less a problem in Texas than in *McKenna* by reason of our decision in Palestine Contractors, Inc. v. Perkins, 386 S.W.2d 764 (Tex.1965) which concerned true joint tort-feasors. See also, Hodges, Contribution and Indemnity Among Tort-feasors, 26 Tex.L.Rev. 150, 170–172 (1947). We feel that these authorities are also instructive on the effects of a release on the relative rights and liabilities of successive tort-feasors. The impact of a release effective only as to the named original tort-feasor on the extent of the liability of the successive tort-feasor is not yet before us. We reserve judgment on that problem.

We disapprove the holdings in Sims v. Auringer, 301 S.W.2d 286 (Tex.Civ.App. 1957, writ ref. n. r. e.); Borden v. Sneed, 291 S.W.2d 485 (Tex.Civ.App.1956, writ ref. n. r. e.); and Phillips v. Wright, 81 S.W.2d 129 (Tex.Civ.App.1935, writ dis.). We overrule Riley v. Industrial Finance Service Co., 157 Tex. 306, 302 S.W.2d 652 (1957) and the other Texas decisions insofar as they approved the common-law unity of release rule, but only in that respect.

This case is before us as a result of the trial court's judgment sustaining the defendant physicians' motion for summary judgment. This judgment was based solely on the conclusion that the release, which named only Perkins, released all other tort-feasors including the doctors. Under our present decision disapproving the unity of release rule, this conclusion was erroneous and the summary judgment for the doctors must fall. The judgments of the courts below are reversed and the cause is remanded for trial.