BRIAN MILLSAP V. SHOW TRUCKS USA, INC.



NO. 07-01-372-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL C



NOVEMBER 7, 2001


________________________________



IN THE INTEREST OF A. N. H., a CHILD


_________________________________



FROM THE 47TH DISTRICT COURT OF RANDALL COUNTY;



NO. 48,249-A; HON. DAVID L. GLEASON, PRESIDING


_______________________________ 


Before QUINN, REAVIS, and JOHNSON, JJ.

 The brief of appellant, Rebecca Vaughn, was due on October 19, 2001. It was not
filed by that deadline. This circumstance was made known to her by letter from this court
dated October 26, 2001. Furthermore, in that same letter, we 1) directed her to explain,
by November 5, 2001, why the brief was not so filed and 2) told her that her failure to so
respond could result in the dismissal of the appeal for want of prosecution. The fifth of
November, 2001, passed without appellant responding to our letter of October 26th, filing
an appellant's brief, or moving for an extension of time to file such a brief. 

 Accordingly, we dismiss the appeal for want of prosecution pursuant to Texas Rules
of Appellate Procedure 38.8(a)(1) and 42.3(b) and (c).


 Per Curiam 


Do not publish.



WOOLDRIDGE, JUDGE



_______________________________



Before QUINN and REAVIS, JJ., and BOYD, SJ. (1)

 In this appeal, appellants John and Vera Uzoh seek reversal of a take-nothing
summary judgment in favor of appellees Gabriel and Obi Ikeakor (the Ikeakors). In their
suit, appellants sought recovery on negligence claims arising from the deaths of their sons
Willie and Tyson. Finding summary judgment was proper, we affirm the judgment of the
trial court.

 A brief recitation of the factual and procedural history of the underlying litigation is
necessary to a proper discussion of the issues raised in this appeal. Vera Uzoh is the
sister of Gabriel Ikeakor's wife. On August 10, 1997, Gabriel invited his nephews, Willie
and Tyson Uzoh, to his house for a birthday party honoring two of Gabriel's children. 
During the party, Gabriel's son, Obi Ikeakor, invited Willie and Tyson to go to the
community swimming pool operated by the Lakes of Fondren Southwest Homeowners
Association, Inc. (the Association). The pool was managed by Southwest Pool
Management, Inc. (Southwest Pool). At the time, the pool was unattended. The three
boys went to the pool, which Gabriel was unaware of. The boys were not wearing swim
suits and they sat at the edge of the pool with their feet in the water. As they did so, one
of the brothers took off his shirt and jumped in, followed soon thereafter by the other
brother. Apparently, neither could swim and they both drowned.

 The Uzohs brought suit against the Association and Southwest Pool asserting
claims under the survival statute and for wrongful death. The Association then brought
third party claims against the Ikeakors and filed a cross-claim against the Association
seeking indemnification from each in the event the Association was found liable.

 In early 2000, the Uzohs settled with the Association and Southwest Pool, resulting
in each parent executing a settlement agreement which contained the following language:

 [i]n consideration of [the settlement amount] . . . by these presents does for
herself (himself), her (his) heirs, executors, legal representatives,
administrators, successors and assigns, RELEASE, ACQUIT AND
FOREVER DISCHARGE, Lakes of Fondren Southwest Homeowners
Association, Inc., Pro-Concept Management Co., Inc., and Southwest Pool
Management, Inc., their employees, . . . insurers . . . and all other persons,
firms or corporations who might be liable for any and all claims, demands,
actions, and/or causes of action of whatsoever [sic] nature, . . . which have
accrued or may ever accrue . . . on account of an accident in which my minor
children were involved and which resulted in their death on or about August
10, 1997. . . .


This was followed by the handwritten notation, "[h]owever, nothing herein shall effect any
right possessed as to Mr. and Mrs. Gabriel Ikeakor." The releases also stated that the
"consideration was in full satisfaction of all damages arising out of said accident." In
February 2000, an agreed judgment implementing the settlement was rendered by the trial
court in that proceeding.

 The Uzohs filed the present suit against the Ikeakors on July 10, 2000, alleging
negligence and gross negligence and seeking actual and exemplary damages. In October
2000, the Ikeakors filed a motion seeking summary judgment, which was denied. In April
2001, the Ikeakors filed a second motion seeking summary judgment on grounds of
limitations, claim preclusion, satisfaction, immunity, and new and independent cause. On
June 1, 2001, the trial court granted the summary judgment giving rise to this appeal. It
did not state the grounds upon which it based the judgment.

 In challenging the judgment, the Uzohs present six issues for our decision. Those
issues are: 1) whether their claims are barred by res judicata or estoppel, 2 & 3) whether
they are barred by the one satisfaction rule, 4) whether Gabriel is liable for Obi's conduct,
5) whether a new and independent cause precludes the Ikeakors' liability, and 6) whether
Gabriel is protected by parental immunity.

 The standards which we apply in reviewing a grant of summary judgment are now
so well established that a detailed discussion of them is not necessary. See Nixon v. Mr.
Property Management Co., 690 S.W.2d 546, 548-49 (Tex. 1985). Suffice it to state that
the movant must show that there is no genuine issue of material fact and that it is entitled
to judgment as a matter of law. In determining the existence of a question of material fact,
evidence favorable to the non-movant must be taken as true, and we must make every
reasonable inference in favor of the non-movant and resolve any doubts in the non-movant's favor. A defendant who conclusively negates at least one of the essential
elements of a cause of action or who conclusively establishes each element of an
affirmative defense is entitled to summary judgment. Randall's Food Markets, Inc. v.
Johnson, 891 S.W.2d 640, 644 (Tex. 1995). Therefore, if the Ikeakors conclusively
established any of their affirmative defenses, the summary judgment would be proper and
it would not be necessary to discuss any of the remaining issues presented in the appeal.

 The Ikeakors argue that the Uzohs were estopped from proceeding against them
because of the prior suit and the Uzohs' ensuing settlement and release. Initially, we will
consider the effect of the settlement releases. Releases are contracts and are governed
by the same rules of construction as are other contracts. Dresser Indus. Inc. v. Page
Petroleum, Inc., 853 S.W.2d 505, 506 (Tex. 1993). When there is no ambiguity question
raised, we must give effect to the intent of the release as expressed by the language used. 
Cash America v. Exchange Services, Inc., No. 07-02-0077-CV (Tex.App.--Amarillo May 29,
2002). Reiterated, the releases recited that the Association and Southwest Pool were
released as were "all other persons, . . . who might be liable for any and all claims,
demands, actions, and/or causes of action of whatsoever [sic] nature." The Ikeakors argue
that the plain language of the release is sufficient to preclude their liability. 

 In responding, the Uzohs present two arguments. First, they reason, the
handwritten addendum specifically excluded the Ikeakors from the benefit of the release
and second, Texas law requires a party to be specifically named in a release to benefit
from it. Initially, we note that although the releases do not show the source of the
handwritten exclusion nor the time it was added, the Ikeakors do not argue that the
addendum was not part of the documents when they were executed and that issue is not
before us.

 Application of the rule we must follow in the construction of the releases requires
that we hold the handwritten addendums do not have the result advocated by the Uzohs. 
As we noted above, the specific language used was, "[h]owever, nothing used herein shall
effect any right possessed as to Mr. & Mrs. Gabriel Ikeakor." (Emphasis added). The
word "effect" when used as a verb, as here, means to "cause to come into being" or "to
bring about." Webster's Third New International Dictionary p. 724. See also Black's Law
Dictionary, 6th Ed. p. 514 (West 1990). Thus, by stating the release did not bring about any
rights the Uzohs possessed as to the Ikeakors, it did not exclude them from the benefit of
the release.

 Had language been used that stated that "nothing herein shall affect any rights" the
Uzohs might have possessed against the Ikeakors, the phrase might have been sufficient
to exclude them from the benefit of the release. This is true, because the word "affect"
when used as a verb, means to "act upon; influence, change, enlarge or abridge; often
used in the sense of acting injuriously upon persons and things." Black's Law Dictionary,
6th Ed. p. 57 (West 1990). While the context might suggest that the parties intended to use
the verb affect instead of effect, we may not rewrite the instrument for them. Cash
America, supra. It is also worth noting that both parties were apparently represented by
legal counsel when the releases were executed and those counsel also signed each of the
releases. Parenthetically, even assuming arguendo the exclusions had the result argued
by the Uzohs, they would not apply to the Ikeakors' son Obi, who was not named in the
releases.

 The Uzohs next argue the Ikeakors may not benefit from the releases because they
were not specifically named or identified. In McMillen v. Klingensmith, 467 S.W.2d 193
(Tex. 1971), the court had occasion to consider the question as to the ability of third
parties to claim the benefit of a release in which they were not specifically named. After
a discussion of the problems it had created as well as the trend in other jurisdictions to do
so, the court abandoned what it denominated as the "unity of release" rule which had
previously been applicable in Texas. In doing so, the court held "a release of a party or
parties named or otherwise specifically identified fully releases only the parties so named
or identified but no others." Id. at 196. However, in doing so, the court also gave the
caveat that "we preserve the rule that a claimant in no event will be entitled to recover
more than the amount required for full satisfaction of his damages." Id. at 196-97.

 In Duncan v. Cessna Aircraft Co., 665 S.W.2d 414 (Tex. 1984), the court again
considered the rule adopted in McMillen and, in additional explication, considered the
question whether the naming of a general class of tortfeasors constituted specific
identification of each member of the class so as to entitle them to the benefit of a release. 
Id. at 419. In doing so, the court instructed that to entitle an unnamed person or entity to
the benefit of a release, the release language must be "so particular that 'a stranger could
readily identify the released party.'" Id.

 In the releases we are considering here, each made reference to three general
classes of people, i.e., the named tortfeasors' 1) employees, 2) insurers, and 3) all other
persons, firms or corporations who might be liable for any and all claims, etc. "[f]or or on
account of an accident in which my minor children were involved . . . ." The first two
classes meet the Duncan specificity requirement, but the Ikeakors do not fit into those
classes. Although the third class is broad enough to include the Ikeakors, the description
is not sufficiently specific to meet the McMillen-Duncan requirements. Thus, because of
this lack of specificity, the Ikeakors would not be within the class of those specifically
included in the release.

 However, having made that decision, logical continuity requires us to consider next
the Uzohs' third issue contention that the summary judgment is sustainable under the one
satisfaction rule. Under that rule, a plaintiff is entitled to only one recovery for damages
suffered because of a particular injury. Crown Title Guar. Co. v. Casteel, 22 S.W.3d 378,
390 (Tex. 2000); Stewart Title Guar. Co. v. Sterling, 822 S.W.2d 1, 5 (Tex. 1981). In
explication of the rule, the Stewart Title court explained:

 The one satisfaction rule applies to prevent a plaintiff from obtaining more
than one recovery for the same injury. Appellate courts have applied the
one satisfaction rule when the defendants commit the same act as well as
when defendants commit technically differing acts which result in a single
injury.


Id. at 7. Section 33.012 of the Civil Practice and Remedies Code gives effect to this rule
by requiring that each claimant's award be reduced by the amount for which he or she
settles. 

 The Ikeakors and the other defendants named in the original suit committed
technically different acts that caused the Uzohs to suffer a single financial injury, namely
damages that resulted from the death of their sons. In the first suit, and in this suit, the
Uzohs asserted wrongful death and survival claims. Each of the releases contained the
following language:

 The aforementioned consideration ($250,000) is accepted by the
undersigned in full satisfaction of all damages arising out of said accident,
without regard to the nature of such damages or the legal theory of recovery
. . . . 

 I have heretofore brought suit . . . to recover damages sustained by me as
a result of the above described accident (described as "an accident in which
my minor children were involved and which resulted in their death . . .") The
above mentioned consideration is accepted by me in full compromise and
settlement of all claims and causes of actions for damages being asserted
in said suit . . . .


 I fully understand that this is a full, complete and final release, and that the
sum of money mentioned above is all the money that is to be paid to me as
a result of the herein described incident.


 The one satisfaction rule is typically applicable to non-settling defendants in a trial
in which the factfinder determines the plaintiff's damages. Here, there has been no factual
determination of the amount of the Uzohs' damages. The Ikeakors argue that the
recitation in the releases that the consideration for the releases was "in full satisfaction of
all damages arising out of said accident," conclusively establishes the amount of their
damages, and they are judicially estopped from claiming additional damages.

 The elements required for a judicial admission are: 1) a sworn inconsistent
statement made during the course of a judicial proceeding; 2) the party making the
statement gained some advantage by it; 3) it was not made inadvertently or because of
fraud, mistake or duress; and 4) it is deliberate, clear, and unequivocal. National Loan
Investors v. Taylor, No. 10-01-0179-CV (Tex.App.--Waco May 10, 2002). The statement
required to create judicial estoppel is not limited to oral testimony, but applies with equal
force to any sworn statement, be it oral or written, made in the course of a judicial
proceeding. Miller v. Gann, 842 S.W.2d 641 (Tex. 1992). Significantly, the instrument
which the Miller court held was sufficient to give rise to a judicial estoppel was a settlement
agreement entered into in a prior separate court proceeding. Id.

 Application of both the one satisfaction rule and the judicial estoppel rule requires
us to hold that the releases executed by the Uzohs were sufficient to estop them from
claiming additional damages arising from the unfortunate and tragic deaths of their sons. 
Because that holding is sufficient to sustain the judgment of the trial court, it obviates the
necessity for discussing the remainder of the issues presented by the Uzohs in their brief
and they are overruled.

 In summary, we find no reversible error in the trial court's judgment and it is
affirmed.


 John T. Boyd

 Senior Justice


Do not publish.
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by
assignment. Tex. Gov't Code Ann. § 75.002(a)(1) (Vernon Supp. 2002).