NO. 07-01-0318-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

SEPTEMBER 30, 2002

_____


VERA I. UZOH AND JOHN M. UZOH, AS PERSONAL
REPRESENTATIVES OF THE ESTATE OF THEIR
MINOR CHILDREN, WILLIE CHUCKWUMA UZOH
AND TYSON ARINZE UZOH, APPELLANTS

V.

GABRIEL IKEAKOR AND OBI IKEAKOR, APPELLEES


_____

FROM THE 269TH DISTRICT COURT OF HARRIS COUNTY;

NO. 2000-34430; HONORABLE JOHN WOOLDRIDGE, JUDGE

_____

Before QUINN and REAVIS, JJ., and BOYD, SJ.[1]


In this appeal, appellants John and Vera Uzoh seek reversal of a take-nothing

summary judgment in favor of appellees Gabriel and Obi Ikeakor (the Ikeakors). In their

---

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by
assignment. Tex. Gov't Code Ann. § 75.002(a)(1) (Vernon Supp. 2002).

suit, appellants sought recovery on negligence claims arising from the deaths of their sons Willie and Tyson. Finding summary judgment was proper, we affirm the judgment of the trial court.

A brief recitation of the factual and procedural history of the underlying litigation is necessary to a proper discussion of the issues raised in this appeal. Vera Uzoh is the sister of Gabriel Ikeakor's wife. On August 10, 1997, Gabriel invited his nephews, Willie and Tyson Uzoh, to his house for a birthday party honoring two of Gabriel's children. During the party, Gabriel's son, Obi Ikeakor, invited Willie and Tyson to go to the community swimming pool operated by the Lakes of Fondren Southwest Homeowners Association, Inc. (the Association). The pool was managed by Southwest Pool Management, Inc. (Southwest Pool). At the time, the pool was unattended. The three boys went to the pool, which Gabriel was unaware of. The boys were not wearing swim suits and they sat at the edge of the pool with their feet in the water. As they did so, one of the brothers took off his shirt and jumped in, followed soon thereafter by the other brother. Apparently, neither could swim and they both drowned.

The Uzohs brought suit against the Association and Southwest Pool asserting claims under the survival statute and for wrongful death. The Association then brought third party claims against the Ikeakors and filed a cross-claim against the Association seeking indemnification from each in the event the Association was found liable.

In early 2000, the Uzohs settled with the Association and Southwest Pool, resulting in each parent executing a settlement agreement which contained the following language:

> [i]n consideration of [the settlement amount] . . . by these presents does for herself (himself), her (his) heirs, executors, legal representatives, administrators, successors and assigns, RELEASE, ACQUIT AND FOREVER DISCHARGE, Lakes of Fondren Southwest Homeowners Association, Inc., Pro-Concept Management Co., Inc., and Southwest Pool Management, Inc., their employees, . . . insurers . . . and all other persons, firms or corporations who might be liable for any and all claims, demands, actions, and/or causes of action of whatsoever [sic] nature, . . . which have accrued or may ever accrue . . . on account of an accident in which my minor children were involved and which resulted in their death on or about August 10, 1997. . . .

This was followed by the handwritten notation, "[h]owever, nothing herein shall effect any right possessed as to Mr. and Mrs. Gabriel Ikeakor." The releases also stated that the "consideration was in full satisfaction of all damages arising out of said accident." In February 2000, an agreed judgment implementing the settlement was rendered by the trial court in that proceeding.

The Uzohs filed the present suit against the Ikeakors on July 10, 2000, alleging negligence and gross negligence and seeking actual and exemplary damages. In October 2000, the Ikeakors filed a motion seeking summary judgment, which was denied. In April 2001, the Ikeakors filed a second motion seeking summary judgment on grounds of limitations, claim preclusion, satisfaction, immunity, and new and independent cause. On June 1, 2001, the trial court granted the summary judgment giving rise to this appeal. It did not state the grounds upon which it based the judgment.

3

In challenging the judgment, the Uzohs present six issues for our decision. Those issues are: 1) whether their claims are barred by *res judicata* or estoppel, 2 & 3) whether they are barred by the one satisfaction rule, 4) whether Gabriel is liable for Obi's conduct, 5) whether a new and independent cause precludes the Ikeakors' liability, and 6) whether Gabriel is protected by parental immunity.

The standards which we apply in reviewing a grant of summary judgment are now so well established that a detailed discussion of them is not necessary. *See Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548-49 (Tex. 1985). Suffice it to state that the movant must show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. In determining the existence of a question of material fact, evidence favorable to the non-movant must be taken as true, and we must make every reasonable inference in favor of the non-movant and resolve any doubts in the non-movant's favor. A defendant who conclusively negates at least one of the essential elements of a cause of action or who conclusively establishes each element of an affirmative defense is entitled to summary judgment. *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995). Therefore, if the Ikeakors conclusively established any of their affirmative defenses, the summary judgment would be proper and it would not be necessary to discuss any of the remaining issues presented in the appeal.

The Ikeakors argue that the Uzohs were estopped from proceeding against them because of the prior suit and the Uzohs' ensuing settlement and release. Initially, we will

4

consider the effect of the settlement releases. Releases are contracts and are governed by the same rules of construction as are other contracts. *Dresser Indus. Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 506 (Tex. 1993). When there is no ambiguity question raised, we must give effect to the intent of the release as expressed by the language used. *Cash America v. Exchange Services, Inc.*, No. 07-02-0077-CV (Tex.App.--Amarillo May 29, 2002). Reiterated, the releases recited that the Association and Southwest Pool were released as were "all other persons, . . . who might be liable for any and all claims, demands, actions, and/or causes of action of whatsoever [sic] nature." The Ikeakors argue that the plain language of the release is sufficient to preclude their liability.

In responding, the Uzohs present two arguments. First, they reason, the handwritten addendum specifically excluded the Ikeakors from the benefit of the release and second, Texas law requires a party to be specifically named in a release to benefit from it. Initially, we note that although the releases do not show the source of the handwritten exclusion nor the time it was added, the Ikeakors do not argue that the addendum was not part of the documents when they were executed and that issue is not before us.

Application of the rule we must follow in the construction of the releases requires that we hold the handwritten addendums do not have the result advocated by the Uzohs. As we noted above, the specific language used was, "[h]owever, nothing used herein shall **effect** any right possessed as to Mr. & Mrs. Gabriel Ikeakor." (Emphasis added). The

5

word "effect" when used as a verb, as here, means to "cause to come into being" or "to bring about." *Webster's Third New International Dictionary* p. 724. *See also Black's Law Dictionary*, 6th Ed. p. 514 (West 1990). Thus, by stating the release did not *bring about* any rights the Uzohs possessed as to the Ikeakors, it did not exclude them from the benefit of the release.

Had language been used that stated that "nothing herein shall **affect** any rights" the Uzohs might have possessed against the Ikeakors, the phrase might have been sufficient to exclude them from the benefit of the release. This is true, because the word "affect" when used as a verb, means to "act upon; influence, change, enlarge or abridge; often used in the sense of acting injuriously upon persons and things." *Black's Law Dictionary,* 6th Ed. p. 57 (West 1990). While the context might suggest that the parties intended to use the verb affect instead of effect, we may not rewrite the instrument for them. *Cash America, supra.* It is also worth noting that both parties were apparently represented by legal counsel when the releases were executed and those counsel also signed each of the releases. Parenthetically, even assuming arguendo the exclusions had the result argued by the Uzohs, they would not apply to the Ikeakors' son Obi, who was not named in the releases.

The Uzohs next argue the Ikeakors may not benefit from the releases because they were not specifically named or identified. In *McMillen v. Klingensmith*, 467 S.W.2d 193 (Tex. 1971), the court had occasion to consider the question as to the ability of third

6

parties to claim the benefit of a release in which they were not specifically named. After a discussion of the problems it had created as well as the trend in other jurisdictions to do so, the court abandoned what it denominated as the "unity of release" rule which had previously been applicable in Texas. In doing so, the court held "a release of a party or parties named or otherwise specifically identified fully releases only the parties so named or identified but no others." *Id.* at 196. However, in doing so, the court also gave the caveat that "we preserve the rule that a claimant in no event will be entitled to recover more than the amount required for full satisfaction of his damages." *Id.* at 196-97.

In *Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414 (Tex. 1984), the court again considered the rule adopted in *McMillen* and, in additional explication, considered the question whether the naming of a general class of tortfeasors constituted specific identification of each member of the class so as to entitle them to the benefit of a release. *Id.* at 419. In doing so, the court instructed that to entitle an unnamed person or entity to the benefit of a release, the release language must be "so particular that 'a stranger could readily identify the released party.'" *Id*.

In the releases we are considering here, each made reference to three general classes of people, *i.e.*, the named tortfeasors' 1) employees, 2) insurers, and 3) all other persons, firms or corporations who might be liable for any and all claims, etc. "[f]or or on account of an accident in which my minor children were involved . . . ." The first two classes meet the *Duncan* specificity requirement, but the Ikeakors do not fit into those

7

classes. Although the third class is broad enough to include the Ikeakors, the description is not sufficiently specific to meet the *McMillen-Duncan* requirements. Thus, because of this lack of specificity, the Ikeakors would not be within the class of those specifically included in the release.

However, having made that decision, logical continuity requires us to consider next the Uzohs' third issue contention that the summary judgment is sustainable under the one satisfaction rule. Under that rule, a plaintiff is entitled to only one recovery for damages suffered because of a particular injury. *Crown Title Guar. Co. v. Casteel*, 22 S.W.3d 378, 390 (Tex. 2000); *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 5 (Tex. 1981). In explication of the rule, the *Stewart Title* court explained:

> The one satisfaction rule applies to prevent a plaintiff from obtaining more than one recovery for the same injury. Appellate courts have applied the one satisfaction rule when the defendants commit the same act as well as when defendants commit technically differing acts which result in a single injury.

*Id*. at 7. Section 33.012 of the Civil Practice and Remedies Code gives effect to this rule by requiring that each claimant's award be reduced by the amount for which he or she settles.

The Ikeakors and the other defendants named in the original suit committed technically different acts that caused the Uzohs to suffer a single financial injury, namely damages that resulted from the death of their sons. In the first suit, and in this suit, the

8

Uzohs asserted wrongful death and survival claims. Each of the releases contained the following language:

> The aforementioned consideration ($250,000) is accepted by the undersigned in full satisfaction of all damages arising out of said accident, without regard to the nature of such damages or the legal theory of recovery . . . .
>
> I have heretofore brought suit . . . to recover damages sustained by me as a result of the above described accident (described as "an accident in which my minor children were involved and which resulted in their death . . .") The above mentioned consideration is accepted by me in full compromise and settlement of all claims and causes of actions for damages being asserted in said suit . . . .
>
> I fully understand that this is a full, complete and final release, and that the sum of money mentioned above is all the money that is to be paid to me as a result of the herein described incident.

The one satisfaction rule is typically applicable to non-settling defendants in a trial in which the factfinder determines the plaintiff's damages. Here, there has been no factual determination of the amount of the Uzohs' damages. The Ikeakors argue that the recitation in the releases that the consideration for the releases was "in full satisfaction of all damages arising out of said accident," conclusively establishes the amount of their damages, and they are judicially estopped from claiming additional damages.

The elements required for a judicial admission are: 1) a sworn inconsistent statement made during the course of a judicial proceeding; 2) the party making the statement gained some advantage by it; 3) it was not made inadvertently or because of fraud, mistake or duress; and 4) it is deliberate, clear, and unequivocal. *National Loan*

9

*Investors v. Taylor*, No. 10-01-0179-CV (Tex.App.--Waco May 10, 2002). The statement required to create judicial estoppel is not limited to oral testimony, but applies with equal force to any sworn statement, be it oral or written, made in the course of a judicial proceeding. *Miller v. Gann*, 842 S.W.2d 641 (Tex. 1992). Significantly, the instrument which the *Miller* court held was sufficient to give rise to a judicial estoppel was a settlement agreement entered into in a prior separate court proceeding. *Id.*

Application of both the one satisfaction rule and the judicial estoppel rule requires us to hold that the releases executed by the Uzohs were sufficient to estop them from claiming additional damages arising from the unfortunate and tragic deaths of their sons. Because that holding is sufficient to sustain the judgment of the trial court, it obviates the necessity for discussing the remainder of the issues presented by the Uzohs in their brief and they are overruled.

In summary, we find no reversible error in the trial court's judgment and it is affirmed.

John T. Boyd
Senior Justice

Do not publish.

10