**Opinion issued December 31, 2019**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-18-00851-CV

———————————

**WHITE LION HOLDINGS, L.L.C. AND BERNARD J. MORELLO,**
**Appellants**

**V.**

**INSGROUP, INC. D/B/A AGIA AGRICULTURAL INS. AGENCY, Appellee**

On Appeal from the 268th District Court
Fort Bend County, Texas
Trial Court Case No. 06-DCV-148721

## MEMORANDUM OPINION

White Lion Holdings, L.L.C. purchased an insurance policy from Scottsdale

Insurance Company. There were two intermediaries involved in the transaction:

U.S. Risk and Insgroup, Inc.[1] White Lion did not receive the coverage it believed was contractually due, and it, along with its sole member and manager, Bernard J. Morello, (collectively referred to as White Lion) sued all three entities. U.S. Risk settled with White Lion. Scottsdale also settled with White Lion. Scottsdale and White Lion executed a settlement release in 2008. White Lion went to trial against the only remaining defendant, Insgroup, in 2018.

After White Lion rested, Insgroup moved for a directed verdict, arguing that it was included in the release White Lion executed 10 years earlier. The trial court granted the motion, dismissed the jury, and entered judgment in Insgroup's favor. White Lion appeals, arguing that the trial court erred in concluding that the release with Scottsdale also released White Lion's claims against Insgroup.

We reverse.

**Standard of Review**

A trial court may direct a verdict for a defendant when a plaintiff fails to present evidence raising a fact issue essential to its right of recovery or when the evidence conclusively proves a fact that establishes the defendant-movant's right

---

[1] Many insurance transactions involve one or more intermediaries. *See* Michael Sean Quinn, *"Agents" and "Brokers": Texas Statutory Definitions and Rule-Entailing Characterizations*, 8 J. TEX. INS. L. 2, 2 (Fall 2007). The intermediaries may be referred to as agents, brokers, producers, or other titles. *See id.*; *see also May v. United Servs. Ass'n of Am.*, 844 S.W.2d 666, 669 n.8 (Tex. 1992) (discussing insurance agents and brokers who sell insurance); *Spring v. Walthall, Sachse & Pipes, Inc.*, No. 04-05-00228-CV, 2005 WL 2012669, at *1 (Tex. App.—San Antonio 2005, no pet.) (noting that insurance producers also sell insurance).

to judgment as a matter of law. *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000). In reviewing the grant of a directed verdict, we follow the standard of review for assessing legal sufficiency of the evidence. *S.V. v. R.V.*, 933 S.W.2d 1, 8 (Tex. 1996); *see generally City of Keller v. Wilson*, 168 S.W.3d 802 (Tex. 2005). We consider the evidence in the light most favorable to the non-movant. *Tex. Emp'rs Ins. Ass'n v. Page*, 553 S.W.2d 98, 102 (Tex. 1977); *Mikob Props., Inc. v. Joachim*, 468 S.W.3d 587, 594 (Tex. App.—Dallas 2015, pet. denied). We can consider any reason why the directed verdict should have been granted, even if not stated in the party's motion. *Gomer v. Davis*, 419 S.W.3d 470, 476 (Tex. App.—Houston [1st Dist.] 2013, no pet.).

**The Release and Directed Verdict**

After White Lion presented its evidence and rested, Insgroup orally moved for a directed verdict, relying on the release White Lion executed in connection with its settlement with Scottsdale a decade earlier. The Scottsdale release states that, in consideration of the settlement amount, White Lion releases, acquits and forever discharges

> SCOTTSDALE INSURANCE COMPANY, its officers, directors, shareholders, agents, attorneys, and employees, heirs, assigns, and members; their affiliated, related, successor, subsidiary and parent companies and corporations, and their officers, directors, shareholders, agents, attorneys and employees; and all their insurers, hereinafter known collectively as the **Released Parties**, from any and all claims, demands and causes of action of whatsoever nature, whether in contract or in tort, and for all other losses and damages of

every kind or character which have accrued, or may ever accrue, by reason of the matters or transactions made the basis of this litigation, including, but not limited to, any and all claims or causes of action arising out of, or in any way related to, the damages allegedly sustained by Plaintiffs, White Lion Holdings, L.L.C. and Bernard Morello, as the result of contractors removing equipment pursuant to the bankruptcy sale of the former Vision Metals steel plant . . . .

Stated more succinctly, White Lion released Scottsdale and its "agents" from all claims related to damage caused by contractors removing equipment from White Lion's Fort Bend property.

Insgroup made three arguments in support of its motion for directed verdict. First, it argued that the broad language of the release resulted in the release of all claims White Lion may have in connection with the Scottsdale insurance policy. Second, it argued that, by statute, and as a matter of law, Insgroup is an agent of Scottsdale, citing to Section 4001.051 of the Texas Insurance Code and, therefore, Insgroup was one of the "Released Parties," which was defined in the release to include Scottsdale and its "agents." Third, it argued that the directed verdict was mandatory in that Insgroup had pleaded release as an affirmative defense and White Lion had not amended its pleading to assert a defense to that affirmative defense, relying on *Ellis v. Woods*, 453 S.W.2d 509 (Tex. App.—El Paso 1970, no writ).

White Lion made two arguments in response. First, it argued that Insgroup waived its affirmative defense by litigating the case for 10 years without arguing

4

the release insulated it from liability, not providing any context or argument in its pleadings that raised release as an affirmative defense, and seeking relief, including attorney's fees, although the release—if Insgroup actually was a party to it—would have prevented such a claim between parties to the release. White Lion argued that the law does not support ambush tactics such as these.

Second, White Lion argued that the conduct of the parties makes clear that Insgroup was not a released party. White Lion noted that, after the Scottsdale settlement, Scottsdale sought and obtained a severance so that a judgment could be entered resolving White Lion's claims against it. According to White Lion, a severance would not have been needed if the only remaining defendant—Insgroup—was also released when Scottsdale settled. White Lion pointed out that Insgroup did not seek dismissal at the time of the release, did not oppose the severance, and never took any steps to indicate to the parties or to the trial court that it considered itself covered by the release, except amending its answer to plead, without context, the affirmative defense of release.

Insgroup responded by reurging its points about the release language being broad, the Insurance Code designating it as Scottsdale's agent as a matter of law, and the failure of White Lion to plead any defense to release.

At that point, the trial court granted the directed verdict, stating, "It is very clear in my mind that this was a full and complete release." About a month later,

the trial court entered a final take-nothing judgment in Insgroup's favor. The judgment states that Insgroup argued that the release was dispositive of White Lion's claims against it and moved for a directed verdict, that the trial court considered Insgroup's argument and White Lion's response, and that the trial court granted the directed verdict.

**The Appeal Presents a Question of Law**

Insgroup was the defendant in the trial court. A directed verdict in its favor was proper only if Insgroup established a right to judgment as a matter of law. *Prudential Ins. Co.*, 29 S.W.3d at 77. In other words, there had to be legally insufficient evidence to permit recovery against it. *See S.V.*, 933 S.W.2d at 8. This presents a question of law. *See City of Keller*, 168 S.W.3d at 822.

On appeal, Insgroup argues that it is entitled to an affirmance of the trial court's judgment, regardless of merit, because White Lion requested only a partial reporter's record on appeal and failed to include in its request a statement of points or issues to be presented. *See* TEX. R. APP. P. 34.6(c) (permitting a party to present a partial reporter's record if the party includes in the request a statement of the points or issues to be presented on appeal). Insgroup argues that, "[b]y failing to request the complete reporter's record, White Lion has made it impossible for the Court to review all evidence presented . . . [and] forfeited appellate relief." We disagree.

6

"The appellate record consists of the clerk's record and, *if necessary to the appeal*, the reporter's record." TEX. R. APP. P. 34.1 (emphasis added). When a contention amounts to a strict question of law, a reporter's record is not necessary. *See In re J.A.B.*, 13 S.W.3d 813, 815 (Tex. App.—Fort Worth 2000, no pet.). Moreover, the release was attached to pleadings filed with the trial court and is in the clerk's record. *Cf. Sam Houston Hotel, L.P. v. Mockingbird Restaurant, Inc.*, 191 S.W.3d 720, 721 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (noting that reporter's record was required in that case because issues required reference to evidence admitted at trial).

Because White Lion presents a question of law regarding whether its release with Scottsdale also released its claims against Insgroup and because the release was part of the clerk's record on appeal, we reject Insgroup's argument that it is entitled to affirmance regardless of the merits.

### Pleading a Defense to an Affirmative Defense

Insgroup argues that White Lion may not defend against Insgroup's affirmative defense of release because White Lion failed to amend its pleading to assert any defense to the claimed release. Insgroup argues by analogy that a plaintiff must plead the discovery rule in response to a defendant's pleading of the affirmative defense of statute of limitations. *See* TEX. R. CIV. P. 94; *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 518 (Tex. 1988) ("A party seeking to

7

avail itself of the discovery rule must therefore plead the rule, either in its original petition or in an amended or supplemented petition in response to defendant's assertion of the defense as a matter in avoidance").

Here, though, White Lion admits it signed a release as part of its settlement with Scottsdale and that the release identified certain released parties. What White Lion disputes is that the release has any relevance to the status of White Lion's claims against Insgroup given that Insgroup was not identified by name or sufficiently descriptive text as a released party.

The rule on affirmative defenses requires that "[i]n a pleading to a preceding pleading, a party shall set forth affirmatively" any matter "constituting an avoidance or affirmative defense." TEX. R. CIV. P. 94. According to the Texas Supreme Court, an affirmative defense is "[a] defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all the allegations in the complaint are true." *Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 155–56 (Tex. 2015) (quoting *affirmative defense*, Black's Law Dictionary (10th ed. 2009)). An avoidance "derives from the historic English common-law pleas of 'confession and avoidance'" and means "a plea in which a defendant admits allegations but pleads additional facts that deprive the admitted facts of an adverse legal effect." *Id.* at 156 (quoting *confession and avoidance*,

8

Black's Law Dictionary (10th ed. 2009)); *see Godoy v. Wells Fargo Bank, N.A.*, 575 S.W.3d 531, 536 (Tex. 2019) (quoting same).

White Lion's position is not an affirmative defense or a matter of avoidance that would invoke Rule 94's requirement to raise defensive matters. *Cf. Godoy*, 575 S.W.3d at 536; *Zorrilla*, 469 S.W.3d at 156. It is, instead, a simple rejection of the proposition that Insgroup was a released party.

Insgroup had the burden to establish its affirmative defense. *See Campbell v. Abrazo Adoption Assocs.*, No. 04-07-00093-CV, 2007 WL 3271608, at *3 (Tex. App.—San Antonio Nov. 7, 2007, pet. denied) (mem. op.) (citing *Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 20 S.W.3d 692, 699 (Tex. 2000)). White Lion was not required to amend its petition to hold Insgroup to that burden.

We cannot agree that White Lion was required to amend its pleading to deny that Insgroup could meet its burden to establish its affirmative defense, with the penalty of an automatic take-nothing judgment for failure to do so. *See Godoy*, 575 S.W.3d at 536 (concluding that party was not required to amend pleading in response to legal argument and noting that court will "reject form-over-substance requirements that favor procedural machinations over reaching the merits of a case."). Having rejected Insgroup's procedural arguments, we will review the legal issue presented.

9

**A Party is Not Released Unless**
**Adequately Identified in the Release**

One of the arguments Insgroup made to the trial court was that the broad language in the release effectively released any conceivable claim White Lion might have related to the Scottsdale insurance policy. This argument contravenes the rule established in *McMillen v. Klingensmith*, 467 S.W.2d 193 (Tex. 1971), as later interpreted in *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 419–20 (Tex. 1984).

Before *McMillen* and *Duncan*, Texas followed the common-law doctrine referred to as the "unity of release rule." *Duncan*, 665 S.W.2d at 419. Under that rule, a release of one tortfeasor operated as a release of all tortfeasors. *See id.* Over time the harshness of the rule and its perverse incentives on nonsettling defendants led to its rejection. *See McMillen*, 467 S.W.2d at 196; *Duncan*, 665 S.W.2d at 422; *see also Philadelphia Indem. Ins. Co. v. SSR Hospitality, Inc.*, No. 08-CV-680-JRN, 2010 WL 11506976, at *6 & n.17 (W.D. Tex. Nov. 1, 2010) (order).

The Texas Supreme Court rejected the rule in *McMillen*. 467 S.W.2d at 196. A new rule was announced: "a release of a party or parties named or otherwise specifically identified fully releases only the parties so named or identified, but no others." *Id.*

There are several important interests that were furthered by abolishing the "unity of release" rule and, instead, requiring specific identification of nonsettling

tortfeasors who would thereafter benefit from the release. *Duncan*, 665 S.W.2d at 422. First, doing so would "encourage both partial and full settlements." *Id.* Second, it would "avoid unfairly depriving injured Texas residents of their full satisfactions." *Id.* Third, it would "avoid providing an incentive to tortfeasors to delay or to stay out of early settlement negotiations." *Id.* Fourth, it would "ensure that Texas claimants do not inadvertently lose their valuable rights against unnamed and perhaps unknown tortfeasors by settling with only one of the wrongdoers." *Id.* The new rule was adopted in recognition that a "nonsettling tortfeasor should not fortuitously escape compensating his Texas victim simply because of settlement arrangements that did not encompass him or his conduct and to which he contributed nothing." *Id.*

As a result, under *McMillen* and *Duncan*, a nonsettling tortfeasor—like Insgroup—cannot claim the protection of a release unless "the release refers to him by name or with such descriptive particularity that his identity or his connection with the tortious event is not in doubt." *Id.* at 420; *see Schomburg v. TRW Vehicle Safety Sys., Inc.*, 242 S.W.3d 911, 914 (Tex. App.—Dallas 2009, pet. denied).

There is no longer unity of release in Texas; for Insgroup to benefit from the Scottsdale release, it must show that it was either referred to by name or "with such descriptive particularity" that its inclusion in the release "is not in doubt." *Id.*

11

Whether a release refers to a tortfeasor with descriptive particularity so as to leave no doubt is reviewed do novo. *See Schomburg*, 242 S.W.3d at 914–15; *Atl. Lloyds Ins. Co. v. Butler*, 137 S.W.3d 199, 218 (Tex. App.—Houston [1st Dist.] 2004, pet. denied).

## Insgroup Did Not Establish as a Matter of Law that it was a Released Party as to Non-Insurance Code Claims

Insgroup's argument to the trial court why it was a released party as a matter of law relied on Insurance Code section 4001.051(b). That section provides that, regardless "whether the act is done at the request of or by the employment of an insurer, broker, or other person, *a person is the agent of the insurer* for which the act is done or risk is taken for purposes of the liabilities, duties, requirements, and penalties provided by this title, Chapter 21, or a provision listed in Section 4001.009," if the person does any of nine enumerated acts, including "(1) *solicits* insurance on behalf of the insurer; (2) *receives or transmits* other than on the person's own behalf *an application for insurance or an insurance policy to or from the insurer*; . . . (4) *receives or transmits an insurance policy* of the insurer; . . . [or] (8) *takes any other action in the making or consummation of an insurance contract* for or with the insurer other than on the person's own behalf . . . ." TEX. INS. CODE § 4001.051(b) (emphasis added). Insgroup argued to the trial court that it was Scottsdale's agent as a matter of law, thereby mandating that it was covered by the term "agent" in the release.

12

On appeal, White Lion notes that Section 4001.051 was enacted after the release was executed and argues that it is inapplicable. Insgroup has responded that the predecessor statute, Insurance Code article 21.02, defined "agents" in "substantially similar terms." Article 21.02(a) provided that "[a]ny person who solicits insurance on behalf of any insurance company . . . or who takes or transmits other than for himself any application for insurance or any policy of insurance to or from such company, . . . or who shall receive or deliver a policy of insurance of any such company, . . . *shall be held to be the agent of the company for which the act is done* . . . as far as relates to all the liabilities, duties, requirements and penalties set forth in this chapter." TEX. INS. CODE art. 21.02 (effective Sept. 1, 2001 to March 31, 2005) (emphasis added).

Insgroup's statutory argument ignores limiting language found in both versions of the statute. An entity that solicits or transmits an insurance policy is the agent of the insurer only "as far as relates to all the liabilities, duties, requirements and penalties set forth in" the Insurance Code. *Id.*; *see* TEX. INS. CODE § 4001.051(b) (using similar terms). The statute does not make Insgroup the agent of Scottsdale for all purposes.

This limitation within the statute was noted by the Fourteenth Court of Appeals in *Westview Drive Invs., LLC v. Landmark Am. Ins. Co.*, 522 S.W.3d 583 (Tex. App.—Houston [14th Dist.] 2017, pet. denied). There, an insured argued that

13

its broker was the agent of the insurer as a matter of law with regard to the insured's fraud claim, citing Section 4001.051(b). *Id.* at 604. The court rejected the argument, holding that, by its terms, the Insurance Code provision created an agency relationship only for purposes of specific statutes, not for purposes of the common-law fraud claim. *Id.* (quoting the language "for the purposes of the liabilities, duties, requirements, and penalties" of particular statutes). Under that court's analysis, the Insurance Code does not make an insurance intermediary the insurer's agent as a matter of law with regard to non-statutory, common law tort claims. *See id.*

We adopt the Fourteenth Court of Appeals's interpretation and hold that neither Article 21.02 nor its successor, Section 4001.051(b), establishes Insgroup as Scottsdale's agent as a matter of law outside the realm of the enumerated Insurance Code and Occupations Code provisions. *See* TEX. INS. CODE § 4001.051(b) (designating person as agent of insurer "for purposes of the liabilities, duties, requirements, and penalties provided by this title, Chapter 21, or a provision listed in Section 4001.009"); § 4001.009 (listing various Insurance Code provisions and Chapter 107 of the Occupations Code).

White Lion and Insgroup were mid-trial when the trial court granted the directed verdict. White Lion's live petition asserted claims against Insgroup for negligence, negligent misrepresentation, violations of the Deceptive Trade

Practices Act, violations of the Insurance Code, and breach of contract. As a matter of law, the referenced Insurance Code provisions, on which Insgroup relied in moving for a directed verdict, do not designate Insgroup as Scottsdale's "agent" for purposes of White Lion's common-law and DTPA claims or its breach-of-contract claim. *See Westview Drive Invs.*, 522 S.W.3d at 604. The trial court erred in granting a directed verdict—judgment as a matter of law—against White Lion on those claims.

## Conclusion

We affirm the trial court's directed verdict as to White Lion's Insurance Code violation claim and reverse it as to all other claims. We remand the suit to the trial court for additional proceedings.

Sarah Beth Landau
Justice

Panel consists of Chief Justice Radack and Justices Landau and Hightower.